563 So.2d 64 (1990)
SHRINERS HOSPITALS FOR CRIPPLED CHILDREN, Petitioner,
v.
Lorraine E. ZRILLIC, Respondent.
ESTATE OF Lorraine E. ROMANS, Petitioner,
v.
Lorraine E. ZRILLIC, Respondent.
Nos. 73639, 73640.
Supreme Court of Florida.
May 31, 1990.
William S. Belcher of Belcher & Fleece, P.A., and Joseph W. Fleece, III, St. Petersburg, for Shriners Hospitals for Crippled Children.
*65 Lawrence E. Dolan of Lawrence E. Dolan, P.A., Orlando, for Estate of Lorraine E. Romans.
Peggy Tribbett Gehl and Linda Chambliss, Ft. Lauderdale, and Joseph C. Jacobs of Ervin, Varn, Jacobs, Odom & Ervin, Tallahassee, for Lorraine E. Zrillic.
BARKETT, Justice.
We have consolidated for review two cases that arose out of Zrillic v. Estate of Romans, 535 So.2d 294 (Fla. 5th DCA 1988). One presents an issue concerning the district court's express declaration of validity of section 732.803 of the Florida Statutes (1985), which pertains to charitable devises.[1] The other alleges an express and direct conflict with Hooper v. Stokes, 107 Fla. 607, 145 So. 855 (1933); Milam v. Davis, 97 Fla. 916, 123 So. 668, cert. denied, 280 U.S. 601, 50 S.Ct. 82, 74 L.Ed. 646 (1929), and In re Estate of Herman, 427 So.2d 195 (Fla. 4th DCA 1982).[2]

I.
Lorraine E. Romans, a resident of Seminole County, Florida, executed her Last Will and Testament on May 5, 1986. After suffering from a lingering illness, she died on July 19, 1986, survived by her daughter, Lorraine E. Zrillic. The testator's will, admitted to probate on December 19, 1986, included the following provisions:
EIGHTH: I give and bequeath several sealed boxes of family antique dishes and figurines specifically designated, to my daughter, LORRAINE E. ZRILLIC, 16531 Blatt Blvd., No. 204, Ft. Lauderdale, Florida. I have intentionally limited her inheritance since I have contributed substantially during my life for her education and subsequent monies I have been required to expend primarily due to her promiscuous type of life. My daughter, LORRAINE E. ZRILLIC has not shown or indicated the slightest affection or gratitude to me for at least five years preceeding [sic] the date of this Will. My executor will know the appraised value of these antiques for estate tax purposes....
... .
ELEVENTH: All the rest residue and remainder of my estate, of whatever nature and wherever situated of which I may be siezed [sic] or possessed or to which I may be entitled at the time of my death, including lapsed legacies and any property over which I have a power of appointment I give, devise and bequeath as a charitable donation to the SHRINERS HOSPITAL[S] for CRIPPLED CHILDREN... .
Pursuant to section 732.803,[3] Zrillic timely requested the circuit court to issue an order avoiding the charitable devise. Timely responses were filed by: Shriners Hospitals *66 for Crippled Children (petitioner in No. 73,639); and James G. Lloyd, James C. Erdman, and Betty C. Merrick, as copersonal representatives of the Estate of Lorraine E. Romans (petitioners in No. 73,640). Copetitioners filed the same two affirmative defenses in the circuit court, alleging that: (1) Zrillic lacked standing to avoid the charitable devise because she was expressly disinherited; and (2) section 732.803 violated the equal protection provisions of the constitutions of the United States and the state of Florida.
The circuit court ruled that Zrillic did have standing, but that section 732.803 was unconstitutional. Zrillic appealed the circuit court's decision as to the constitutionality of the statute, and the copersonal representatives of the Estate of Romans cross-appealed on the issue of standing.
The Fifth District Court of Appeal affirmed in part and reversed in part, finding that Zrillic had standing, but that section 732.803 did not violate either constitution. 535 So.2d 294. Both Shriners Hospitals and the copersonal representatives of the Estate of Romans petitioned this Court to review that decision.
We are presented with two issues. The threshold question is whether a lineal descendant, whose legacy was expressly limited by the decedent's will, had standing to set aside a charitable devise in that will. The second question concerns the constitutionality of section 732.803.

II.
Zrillic had to satisfy two elements to meet the standing requirement of section 732.803. First, Zrillic had to be a lineal descendent of the testator. That fact was admitted. Second, Zrillic had to be eligible to receive an interest in the devise, if avoided. Copersonal representatives of the Estate of Romans argue that Zrillic would not have been able to take an interest if the charitable devise was avoided because the testator intended Zrillic not to share in the estate beyond the express terms of the will.
The general rule of construction is that the intent of the testator prevails. § 732.6005(1), Fla. Stat. (1985). However, allowing the testator's intent to control construction of section 732.803 would defeat both the plain meaning and the logic of the statute. See Ruppert v. Estate of Hastings, 311 So.2d 810, 811 (Fla. 1st DCA 1975) (construing predecessor statute). Section 732.803 would serve no purpose if Zrillic is denied standing because the statute's only logical use is to give standing to one who otherwise would be deprived of a legacy. Any other conclusion would have the practical effect of denying everybody the right to contest such a will. Clearly the legislature must have intended the general rule of construction in section 732.6005(1) to give way to the specific, contrary purpose of section 732.803. See, e.g., Adams v. Culver, 111 So.2d 665, 667 (Fla. 1959) ("It is a well settled rule of statutory construction ... that a special statute covering a particular subject matter is controlling over a general statutory provision covering the same and other subjects in general terms."). Thus, we agree with the district court that Zrillic had standing to petition to avoid the devise. We disapprove In re Estate of Herman to the extent that its reasoning conflicts with this analysis, but we find no conflict with Hooper v. Stokes and Milam v. Davis, which are wholly distinguishable.
Now we move on to discuss the constitutionality of section 732.803. First, we address whether the section imposes an unreasonable restriction on a property owner's right to dispose of property by will. Then we analyze the equal protection claim.

III.
Property rights are protected by article I, section 2 of the Florida Constitution:
SECTION 2. Basic rights.  All natural persons are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property; except that the ownership, inheritance, disposition and possession of real property by aliens ineligible for citizenship may be *67 regulated or prohibited by law. No person shall be deprived of any right because of race, religion or physical handicap.
(Emphasis added.) These property rights are woven into the fabric of Florida history. See Declaration of Rights, §§ 1, 18, Fla. Const. (1885) (as amended prior to the 1968 revision); Declaration of Rights, §§ 1, 17, Fla. Const. (1868); art. I, § 1, Fla. Const. (1865); art. I, § 1, Fla. Const. (1861); art. I, § 1, Fla. Const. (1838).
To interpret the extent of property rights under the constitution, we must make a common sense reading of the plain and ordinary meaning of the language to carry out the intent of the framers as applied to the context of our times. See In re Advisory Opinion to the Governor Request of June 29, 1979, 374 So.2d 959, 964 (Fla. 1979). It is commonly understood that acquire means to gain, obtain, receive, or to come into possession or ownership of property, see, e.g., I The Oxford English Dictionary 115 (2d ed. 1989), and it "[i]ncludes taking by devise." Black's Law Dictionary 23 (5th ed. 1979) (emphasis supplied). Possess commonly means to have, hold, own, or control "anything which may be the subject of property, for one's own use and enjoyment, either as owner or as the proprietor of a qualified right in it." Id. at 1046-47; see also, e.g., XII The Oxford English Dictionary 171-72 (2d ed. 1989). Protect generally means to guard, preserve and keep safe from harm, encroachment, injury, alteration, damage, or loss. See, e.g., XII The Oxford English Dictionary 677-78 (2d ed. 1989); American Heritage Dictionary 995 (2d College ed. 1985). Thus, the phrase "acquire, possess and protect property" in article I, section 2, includes the incidents of property ownership: the "[c]ollection of rights to use and enjoy property, including [the] right to transmit it to others." Black's Law Dictionary 997 (5th ed. 1979) (emphasis supplied).[4]
This common sense reading of the language in article I, section 2, leads to the conclusion that the right to devise property is a property right protected by the Florida Constitution. Our conclusion is supported by the provision's express exception for aliens ineligible for citizenship. There would be no need to carve out an exception for "ownership, inheritance, disposition and possession of real property" unless those property rights already were subsumed in the clause modified by the exception. Furthermore, by narrowly limiting the class of persons whose rights may be restricted by the legislature, i.e., aliens ineligible for citizenship, it is clear that the framers intended all other people, including testators, be free from unreasonable legislative restraint.
We are aware that some decisions in Florida and elsewhere vary from this conclusion, relying upon an old legal distinction between "property" rights and "testamentary" rights. See generally 1 W. Bowe & D. Parker, Page on the Law of Wills chs. 1-3 (rev. ed. 1960). The distinction those courts have drawn is that property rights are inalienable rights grounded in natural law, whereas freedom of testation is purely a creation of statute that did not exist at common law. The genesis of that distinction lies in long-abandoned feudal notions of property. In feudal England, only the king owned real property, which represented the bulk of wealth, and only the king could decide who could exercise real property rights when a person died. During the decline of feudalism, Parliament enacted the Statute of Wills to grant citizens the lawful right to devise real property, qualified by regulations necessary to preserve order. Hence, devising property came to be regarded as a right created by statute, not a "property" right inherent in the common law of England. See generally 1 W. Bowe & D. Parker, Page on the Law of Wills chs. 1-3 (rev. ed. *68 1960); 1 D. Redfearn, Wills and Administration in Florida chs. 1, 15 (L. Jeffries 6th ed. 1986); A. Reppy & L. Tompkins, Historical and Statutory Background of the Law of Wills ch. 1 (1928).
That analysis is inapplicable in our society where feudalism never existed and where property rights rest on an express constitutional foundation that is distinguishable from the common law roots of feudal England. Yet all too often courts have failed to thoroughly analyze the distinction, instead giving unquestioning allegiance to an antiquated way of thinking. See Taylor v. Payne, 154 Fla. 359, 362-63, 17 So.2d 615, 617, appeal dismissed, 323 U.S. 666, 65 S.Ct. 49, 89 L.Ed. 541 (1944); see also In re Estate of Greenberg, 390 So.2d 40, 43 (Fla. 1980) (following Taylor), appeal dismissed, 450 U.S. 961, 101 S.Ct. 1475, 67 L.Ed.2d 610 (1981); In re Estate of Blankenship, 122 So.2d 466, 469 (Fla. 1960) (following Taylor); Arthritis Foundation v. Beisse, 456 So.2d 954 (Fla. 4th DCA 1984) (following Taylor), review denied, 467 So.2d 999 (Fla. 1985). The plain meaning of the language of the Florida Constitution compels us to conclude that the people chose not to blindly adhere to the old English distinction, and instead came to regard testamentary disposition of property as a specifically expressed constitutional property right. Accord In re Estate of Beale, 15 Wis.2d 546, 552, 113 N.W.2d 380, 383 (1962) (the right to make a will is a constitutional right); Nunnemacher v. State, 129 Wis. 190, 196, 108 N.W. 627, 628 (1906) (the right to pass property by will or inheritance is a natural right under the state constitution and cannot be wholly taken away or substantially impaired by the legislature).
Of course, even constitutionally protected property rights are not absolute, and "are held subject to the fair exercise of the power inherent in the State to promote the general welfare of the people through regulations that are reasonably necessary to secure the health, safety, good order, [and] general welfare." Golden v. McCarty, 337 So.2d 388, 390 (Fla. 1976); see also Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881, 884 (1974) (the degree of a constitutionally protected property right "must be determined in the light of social and economic conditions which prevail at a given time"); cf. Department of Agric. & Consumer Servs. v. Mid-Florida Growers, Inc., 521 So.2d 101, 103 (Fla.) (a property regulation may be reasonable but still may require the state to compensate a landowner), cert. denied, 488 U.S. 870, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988).
The question we must resolve is whether section 732.803 is reasonably necessary to limit the property rights guaranteed by article I, section 2 of the Florida Constitution. We find that it is not. Statutes that restrict charitable gifts originated in feudal England as part of the struggle for power and wealth between the king and the organized church. See generally, e.g., 1 D. Redfearn, Wills and Administration in Florida chs. 1, 15 (L. Jeffries 6th ed. 1986); 79 Am.Jur.2d Wills § 176 (1975). The church acquired wealth through exercising its ecclesiastical jurisdiction over personal property, which was subject to much abuse, and its acquisition of real property by subinfeudation, which deprived the king and lords of some benefits and control over property disposition. See generally J. Dukeminer & J. Krier, Property 152-53 (2d ed. 1988); 1 D. Redfearn, Wills and Administration in Florida ch. 1 (L. Jeffries 6th ed. 1986); II F. Pollock & F. Maitland, The History of English Law ch. VI § 3 (2d ed. 1968). Mortmain statutes were promulgated primarily to restrict the church's ability to acquire property. However, mortmain statutes became less and less effective as feudalism declined. See generally J. Dukeminer & J. Krier, Property 152-53 (2d ed. 1988).
Over time, society's attitude has changed to the point where charitable gifts, devises and trusts now are favored and will be held valid whenever possible. 79 Am.Jur.2d Wills § 176 (1975). See also 4A Powell on Real Property para. 577 (1986). As society's attitude changed, so did the rationale employed to support the few *69 mortmain-type statutes that survived.[5] Today, they are justified by their supporters as a means of protecting a testator's family from disinheritance. The expressed concern is that charitable organizations either exert undue influence, or that testators who may be laboring under the apprehension of impending death are peculiarly susceptible to influence. E.g., Taylor v. Payne, 154 Fla. 359, 364, 17 So.2d 615, 618, appeal dismissed, 323 U.S. 666, 65 S.Ct. 49, 89 L.Ed. 541 (1944); 1 W. Bowe & D. Parker, Page on the Law of Wills § 3.15 (rev. ed. 1960).
Although it may be reasonable for the legislature to protect family members who are dependent or in financial need, it is unreasonable to presume, as the statute seems to do, that all lineal descendants are dependents, in need, or are not otherwise provided for. Florida law is replete with protections for surviving family members who may have been dependent on the testator. For example, the Florida Constitution expressly provides protection in the form of homestead exemptions for real and personal property, art. X, § 4, Fla. Const.; see also §§ 732.401-.4015, Fla. Stat. (1985), and a coverture restriction, art. X, § 5, Fla. Const.; see also § 732.111, Fla. Stat. (1985), The Probate Code provides for an elective share, §§ 732.201-.215, Fla. Stat. (1985), personal property exemptions, § 732.402, Fla. Stat. (1985), and a family allowance, § 732.403, Fla. Stat. (1985). The Probate Code also protects against fraud, duress, mistake, and undue influence. § 732.5165, Fla. Stat. (1985).
No similar protections are assured by section 732.803. To the contrary, the charitable devise restriction fails to protect against windfalls for lineal descendants who have had no contact with the decedent or who have been neglectful or abusive to the decedent but who may benefit from the avoidance of a charitable devise. It also fails to protect against windfalls for lineal descendants whose legacy was specifically limited by the decedent. Another significant flaw is that artful will drafting easily defeats the effect of the statute: If the testator names anybody other than a spouse or lineal descendent to take the charitable devise in the event the charitable devise fails, nobody would have standing to petition to avoid the charitable devise. See In re Estate of Shameia, 257 So.2d 77, 78-79 (Fla. 2d DCA 1972).
Neither the ancient purpose nor the modern justification underlying the restriction on charitable devises is well served by section 732.803. The statute is not reasonably necessary to accomplish the asserted state goals at the cost of offending property interests protected by the Florida Constitution.

IV.
We also find that section 732.803 violates the equal protection guarantees of article I, section 2 of the Florida Constitution, and the fourteenth amendment of the United States Constitution.
It is well settled under federal and Florida law that all similarly situated persons are equal before the law. McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); Haber v. State, 396 So.2d 707 (Fla. 1981); Soverino v. State, 356 So.2d 269 (Fla. 1978). Moreover, without exception, all statutory classifications that treat one person or group differently than others must appear to be based at a minimum on a rational distinction having a just and reasonable relation to a legitimate state objective. In re Greenberg's Estate, 390 So.2d 40 (Fla. 1980), appeal dismissed sub nom. Pincus v. Estate of Greenberg, 450 U.S. 961, 101 S.Ct. 1475, 67 L.Ed.2d 610 (1981); Graham v. Ramani, 383 So.2d 634 (Fla. 1980); Department of Health & Rehabilitative Services v. Heffler, 382 So.2d 301 (Fla. 1980).
Palm Harbor Special Fire Control Dist. v. Kelly, 516 So.2d 249, 251 (Fla. 1987). Equal protection analysis requires that classifications be neither too narrow nor *70 too broad to achieve the desired end. Such underinclusive or overinclusive classifications fail to meet even the minimal standards of the rational basis test quoted above.[6]
Section 732.803 creates a class consisting of only those testators who die within six months after executing a will that devised property to a "benevolent, charitable, educational, literary, scientific, religious, or missionary institution, corporation, association, or purpose," a governmental body, or a trustee thereof. This classification is underinclusive because "it does not affect many charitable gifts made without proper deliberation, nor does it void legacies to persons who are in an equal position with religious persons to influence a testator." Estate of French, 365 A.2d 621, 624 (D.C. 1976), appeal dismissed, 434 U.S. 59, 98 S.Ct. 280, 54 L.Ed.2d 238 (1977). The statute does not protect against overreaching by unscrupulous lawyers, doctors, nurses, housekeepers, companions, or others with a greater opportunity to influence a testator. There is no reason to believe that testators need more protection against charities than against unscrupulous and greedy relatives, friends, or acquaintances.[7]
The classification also is overinclusive because "it voids many intentional bequests by testators who were not impermissibly influenced or who do not have immediate family members in need of protection." Estate of French, 365 A.2d at 624. Accord In re Estate of Cavill, 459 Pa. 411, 416, 329 A.2d 503, 506 (1974). As our sister court in Ohio said of its analogous statute:
Unfortunately, a large number of cases falling within the scope of R.C. 2107.06 involve the estates of testators who did not execute their last will under the belief that their death was near. Furthermore, out of the remaining cases impacted by the statute in which the testator did believe that he was near death, it is reasonable to assume that few involved bequests that were based upon unsound judgment or the result of undue influence by a governmental, benevolent, religious, educational or charitable beneficiary.
Shriners' Hosp. for Crippled Children v. Hester, 23 Ohio St.3d 198, 201, 492 N.E.2d 153, 156 (1986) (emphasis in original).
There is no rational distinction to automatically void a devise upon request when the testator survives the execution of the will by five months and twenty-eight days, but not when the testator survives a few days longer. Accord In re Estate of Cavill, 459 Pa. at 414-18, 329 A.2d at 505-06. Nor is it rational to apply the statute in cases where the testator dies suddenly due to an accident during the six-month period after making the charitable bequest.
The effect of section 732.803 is to defeat the testator's express intent without any reasonable relation to the evil sought to be cured. We agree with the analogous decisions of our sister courts in Hester, Estate of French, and In re Estate of Cavill. The classification established in section 732.803 does not draw a rational distinction, and it is neither just nor reasonably related to a legitimate governmental purpose.[8]
For the aforementioned reasons, we overrule Taylor, approve the decision of the court below as to standing, but quash the decision as to its discussion of the *71 constitutionality of section 732.803. We find that section 732.803 is unconstitutional for the reasons expressed above. This cause is remanded for further proceedings in accordance herewith.
It is so ordered.
EHRLICH, C.J., and SHAW and KOGAN, JJ., concur.
GRIMES, J., concurs in result with an opinion.
McDONALD, J., concurs in result and dissents in part with an opinion, in which OVERTON, J., concurs.
GRIMES, Justice, concurring in result.
I agree that section 732.803, Florida Statutes (1985), violates the equal protection clauses of the state and federal constitutions. Therefore, I concur with sections I, II, and IV of the majority opinion.
I cannot agree with section III of the majority opinion which holds that article I, section 2, of the Florida Constitution contains a constitutional right to devise property which renders invalid the provisions of section 732.803. In Taylor v. Payne, 154 Fla. 359, 17 So.2d 615, appeal dismissed, 323 U.S. 666, 65 S.Ct. 49, 89 L.Ed. 541 (1944), this Court held that similar language in our earlier constitution did not preclude the legislature from enacting section 732.803. Nothing has occurred since that date to suggest that this analysis was wrong. I concur with Justice McDonald's discussion of this issue.
McDONALD, Justice, concurring in result, dissenting in part.
I concur with the result reached in the majority opinion, but for entirely different reasons. For the reasons hereinafter stated, I would sustain the constitutionality of section 752.803, Florida Statutes (1985), but, because the testatrix clearly and unequivocally expressed the intent to drastically restrict and limit her bequests to her daughter and because the will demonstrates other lineal descendants, I would rule that Mrs. Zrillic cannot contest the charitable bequest. Because of the clear intent manifested in the will to limit her inheritance she is not a lineal descendant who would receive any interest in the devise and does not meet the qualification required by the statute to complain. Such a holding is consistent with In re Estate of Cairo, 35 A.D.2d 76, 312 N.Y.S.2d 925 (1970), affirmed, 29 N.Y.2d 527, 272 N.E.2d 574, 324 N.Y.S.2d 81 (1971). It may be inconsistent with Ruppert v. Estate of Hastings, 311 So.2d 810 (Fla. 1st DCA 1975), but the facts of that reported case are too limited to tell.
To the extent possible we should give meaning to subsection 732.6005(1), Florida Statutes (1985), which provides: "The intention of the testator as expressed in his will controls the legal effect of his dispositions. The rules of construction expressed in this part shall apply unless a contrary intention is indicated by the will." Such intention must yield to a statutory or constitutional inhibition, but otherwise should be followed. It is clear that the testatrix did not want Mrs. Zrillic to receive more than a specified and limited bequest. Under these circumstances other lineal decendants would be the residual legatees who would receive any voided bequests, not Mrs. Zrillic. If the complaining party would receive no interest in the voided estate, a court should not void it. In re Estate of Herman, 427 So.2d 195 (Fla. 4th DCA 1982). I conclude that only the grandchildren could complain of the bequest to Shriners and, because they did not do so, the bequest survives.
I would adhere to the holding of Taylor v. Payne, 154 Fla. 359, 17 So.2d 615, appeal dismissed, 323 U.S. 666, 65 S.Ct. 49, 89 L.Ed. 541 (1944), and sustain the constitutionality of section 732.803, Florida Statutes (1985). In Taylor this Court rejected the contention that the then-existing section 20 of the Probate Act, the pertinent portions of which are now codified in section 732.803, Florida Statutes (1985), was unconstitutional "in that it deprives the testator and the legatees of the right to receive, enjoy and dispose of property without due process of law, and denies them the equal protection of the law in the acquisition *72 and disposition of property." Id. at 362, 17 So.2d at 617. In doing so it stated:
Nowhere in the Federal Constitution is there any attempt to treat of the matter of disposition of property by will, no reference being made to the subject of testamentary alienation of property, either directly or by implication. And except as the power to will property has been limited indirectly by Article X of the Constitution of Florida, which inhibits the alienation of homestead property by will where the owner thereof has children in esse, no effort at constitutional regulation of the subject has been made by the people of the State of Florida. Therefore, the right of testamentary disposition of property does not emanate from the organic law, as contended by counsel, but is a creature of the law derived solely from statute without constitutional limitation. Accordingly, the right is at all times subject to regulation and control by the legislative authority which creates it. The authority which confers the right may impose conditions thereon, such as limiting disposition to a particular class or fixing the time which must ensue subsequent to the execution of the will before gifts to a particular class shall be deemed valid; or the right to dispose of property by will may be taken away altogether, if deemed necessary, without private or constitutional rights of the citizen being thereby violated.
Id. at 362-63, 17 So.2d at 617. It further noted:
Our statute is not a mortmain act. The Legislature never intended by the enactment of the statute to place any restriction upon the right of benevolent, charitable, educational, or religious institutions to take and hold property; but only to place a limitation upon the right of testators to dispose of their property to such institutions when the conditions that are detailed in the statute exist. The purpose of the statute is clear: it is to protect the widow and children from improvident gifts made to their neglect by the testator; the design of the statute being obviously to prevent testators who may be laboring under the apprehension of impending death from disposing of their estates to the exclusion of those who are, or should be, the natural objects of the testator's bounty.
Whether the legislative philosophy behind such enactment is sound may be debatable. But the power of the legislature to enact such a statute may not be doubted.
Id. at 364, 17 So.2d at 618 (citations omitted, emphasis added).
I confess that the facts of this case are not attractive for application of the statute, but could well be present in another series of events. Surely one would have to say that, had the testator, in her last few days, succumbed to a television evangelist's call to be with the Lord by delivering her property to his church and thus leave unprotected a physically handicapped child, a rational basis for the statute would exist. The legislature has the right to put conditions on devises of property. It may be that in today's society the legislature should not effect legislation like section 782.803, but that is for it to decide. Our role is to decide whether the legislature could do so and, contrary to the majority's views, I believe it can.
The majority concludes that disposition of property by will is protected by article I, section 2, Florida Constitution, and implicitly restricts the legislature's power to act in this area. This is in conflict with Taylor and In re Estate of Blankenship, 122 So.2d 466, 469 (Fla. 1960), in which this Court stated that "the right to dispose of property by will is neither inherent nor is it protected by our state or federal constitutions. The right is a creature of statute, subject at all times to prohibition, regulation, and control by the legislature."
The right of the legislature to control and put limitations on the devise of property has long been recognized. Justice Taylor's concurring opinion in Thomas v. Williamson, 51 Fla. 332, 342-43, 40 So. 831, 834 (1906), correctly stated:
The power to alienate any species of property by last will and testament has never been an inherent right in the citizen, *73 but one that is derived from legislation, and is at all times subject to legislative control, and may at any time be altogether taken away by legislative act. In the history of this State, as early as November 20th, 1828, every person of the age of twenty-one years was empowered, by an act of the legislature then passed to dispose of property real and personal by last will and testament, and thus has the law stood from that day down to the present time. Section 1792, Revised Statutes of 1892. I do not think that it was the design of Section 4 of Article X of our Constitution of 1885 to curtail or impose any limitations or restrictions upon the power of the legislature over the general subject of the alienation of property by last will and testament, except that it in express terms makes the homestead inalienable by will when the holder thereof has children in esse. Of course the legislature cannot interfere with this status given by the organic law to the homestead of a holder having children. The constitution inhibits its alienation by will when the holder has children, and the legislature is without power contra to the constitution, to empower him to do so; but the language of said section 4 of the constitution is carefully and somewhat peculiarly chosen. It expressly and carefully confines any one construing it to its own terms and provisions. Its language is: "Nothing in this article shall be construed to prevent the holder of a homestead, if he be without children, from disposing of his or her homestead by will in a manner prescribed by law." This is equivalent to saying: "None of the provisions in this article of this constitution shall be held to prevent the holder of a homestead who is without children from alienating the same by will, but although this constitution does not so prevent, yet the legislature is left free to prevent it, or to impose such limitations and conditions upon such an alienation of it, in the absence of children, as it may see proper." In other words, the constitution neither permits nor prevents the disposal of the homestead by will, when the holder is without children, but the legislature is left free to deal with the subject as it sees proper.
(Emphasis in original.)
Taylor was decided in 1944. I do not know of any constitutional or societal changes since then adequate to mandate overruling it. As recently as 1984 the statute's constitutionality was upheld by the Fourth District Court of Appeal in Arthritis Foundation v. Beisse, 456 So.2d 954 (Fla. 4th DCA 1984), review denied, 467 So.2d 999 (Fla. 1985). Prior thereto the legitimacy of the statute had been recognized numerous times. E.g., Ruppert v. Estate of Hastings, 311 So.2d 810 (Fla. 1st DCA 1975); In re Estate of Rauf, 213 So.2d 31 (Fla. 1st DCA 1968), cert. denied, 225 So.2d 524 (Fla. 1969); In re Estate of Lane, 186 So.2d 257 (Fla. 2d DCA 1966); In re Estate of Blankenship. The legislature has not repealed the statute since we found it constitutional, but has, in effect, reenacted it. We should not nullify it now. I therefore dissent on finding section 732.803 unconstitutional.
OVERTON, J., concurs.
NOTES
[1] This section is commonly known as Florida's mortmain statute.
[2] We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution.
[3] Section 732.803 of the Florida Statutes (1985), provides:

(1) If a testator dies leaving lineal descendants or a spouse and his will devises part or all of the testator's estate:
(a) To a benevolent, charitable, educational, literary, scientific, religious, or missionary institution, corporation, association, or purpose,
(b) To this state, any other state or country, or a county, city, or town in this or any other state or country, or
(c) To a person in trust for any such purpose or beneficiary, whether or not the trust appears on the face of the instrument making the devise, the devise shall be avoided in its entirety if one or more of the lineal descendants or a spouse who would receive any interest in the devise, if avoided, files written notice to this effect in the administration proceeding within 4 months after the date letters are issued, unless:
(d) The will was duly executed at least 6 months before the testator's death, or
(e) The testator made a valid charitable devise in substantially the same amount for the same purpose or to the same beneficiary, or to a person in trust for the same purpose or beneficiary, as was made in the last will or by a will or a series of wills duly executed immediately next to the last will, one of which was executed more than 6 months before the testator's death.
(2) The testator's making of a codicil that does not substantially change a charitable devise as herein defined within the 6-month period before the testator's death shall not render the charitable gift voidable under this section.
[4] These same principles of property also are embodied in the takings clauses of the constitutions of the United States and the state of Florida, which require that property owners be compensated when the government substantially interferes with an owner's use of property. E.g., First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987); Palm Beach County v. Tessler, 538 So.2d 846 (Fla. 1989).
[5] The parties agree that only Florida, Georgia, Idaho and Mississippi have mortmain-type statutes still in effect. Accord Shriners' Hospital for Crippled Children v. Hester, 23 Ohio St.3d 198, 203 n. 5, 492 N.E.2d 153, 157 n. 5 (1986).
[6] We have previously applied the rational basis test in the context of a probate dispute where neither a suspect class nor a fundamental right was implicated. See In re Estate of Greenberg, 390 So.2d 40 (Fla. 1980), appeal dismissed, 450 U.S. 961, 101 S.Ct. 1475, 67 L.Ed.2d 610 (1981) (a testator has no fundamental right to appoint a personal representative). Although the express constitutional property right at issue in the instant case may well qualify for application of a more stringent test, we need not address that issue because the charitable devise restriction in section 732.803 fails to satisfy even the rational basis test.
[7] "Modern policies ... do not seem to suggest that testators need more protection against charities than against greedy relatives." ABA Real Property, Probate and Trust Law Section, Committee on Succession, Restrictions on Charitable Testimentary Gifts, 5 Real Prop., Prob. and Trust J. 290, 298 (1970) (quoted in Note, Pennsylvania's Mortmain Statute Declared Unconstitutional, 80 Dick.L.Rev. 152, 153 (1975) (emphasis omitted)).
[8] Certainly the statute would fail to pass constitutional muster under a heightened scrutiny analysis as well. See supra n. 6.