988 So.2d 1 (2007)
In re ESTATE OF Robert W. MAGEE, deceased,
Judith Magee, individually and as Trustee of the Robert W. Magee Revocable Trust U/T/D 10/21/94, Appellant,
v.
Edna Magee, Appellee.
No. 2D06-3692.
District Court of Appeal of Florida, Second District.
September 26, 2007.
Rehearing Denied November 30, 2007.
Robert W. Goldman of Goldman Felcoski & Stone, P.A., Naples, for Appellant.
Joseph W. Fleece, III, of Baskin-Fleece, and Ray Peacock of Peacock & Gaffney, Clearwater, for Appellee.
ALTENBERND, Judge.
Judith Magee (Judith) appeals an order entered in a probate proceeding regarding her father, Robert W. Magee, that determines Edna Magee's right as a surviving spouse to an elective share of Mr. Magee's estate. The order expressly declares that Florida's elective share statutes, codified at sections 732.201 to 732.2155, Florida Statutes (2002), are constitutional under the United States and Florida Constitutions. Based upon the record and the arguments presented, we affirm.
Robert and Edna Magee were married on January 2, 1994. At the time, both of them were in their seventies. Thereafter, on October 21, 1994, Mr. Magee executed the Robert W. Magee Revocable Inter Vivos Trust. Mr. Magee was the grantor of the trust and the trustee during his lifetime. According to the terms of the trust, upon Mr. Magee's death, his wife Edna would act as successor trustee if able, and the assets and income of the trust were to be distributed in equal thirds to his wife Edna, his daughter Judith, and to another of Mr. Magee's daughters.[1] Judith was to *2 act as successor trustee in the event Edna was unable to fulfill that role.
For reasons not explained in this record, Mr. Magee amended the trust on December 13, 2001. In the amendment, Mr. Magee removed Edna as a successor trustee and placed Judith in that role. The trust also removed Edna as a beneficiary and instead provided that Judith would receive one-half of the trust assets and income upon Mr. Magee's death, and that two of Mr. Magee's grandchildren would each receive one-fourth of the remaining trust assets and income. Notably, this amendment was made well after substantial revisions were made to Florida's elective share statutes in 1999 and after the date those statutes applied to any decedent. See ch. 99-343, Laws of Fla.; § 732.2155(1), Fla. Stat. (2001) (providing that the amendments to the elective share provisions are effective as of October 1, 1999, but only apply to decedents dying after October 1, 2001). We must therefore assume that the changes Mr. Magee made to his trust with the assistance of counsel were made with knowledge of the changes in the statutes governing elective share then in effect.
Edna Magee and Robert Magee remained married until Mr. Magee died on December 15, 2002. Edna filed a petition for administration of Mr. Magee's estate and a notice of her intent to seek the elective share. Judith was provided formal notice of these proceedings and objected to the election, arguing that the elective share statutes are unconstitutional under the Florida and United States Constitutions. The probate court rejected this assertion and determined that Edna was entitled to an elective share in accordance with the provisions of sections 732.201 to 732.2155. After further proceedings, the probate court entered a final order determining that Edna was entitled to the amount of $560,739.15 as her elective share of Mr. Magee's elective estate and designating how the share would be distributed to Edna.
We reject without further discussion Judith's argument that the probate court erred in the calculation of the elective share. We also reject her assertion that Florida's elective share statutes violate the Due Process Clause of the United States Constitution. Despite the prevalence of elective share statutes and related provisions regarding dower and curtesy throughout the country, Judith has pointed to no case law holding an elective share or similar statute unconstitutional for violating the Due Process Clause of the United States Constitution. Further, we conclude that the amended elective share statutes cannot be said to impair any contractual rights in this case, given that the substantive trust provisions at issue were amended after the effective date of the statutory amendments at a time when Mr. Magee should have been aware or advised of the changes in the law and the implications the amendments would have on his attempts to change the terms of his trust. Judith's argument that the elective share statutes violate article I, section 2 of the Florida Constitution, however, merits some discussion.
Article I, section 2 of the Florida Constitution provides to all persons "the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property; except that the ownership, inheritance, disposition and possession of real *3 property by aliens ineligible for citizenship may be regulated or prohibited by law."
As noted in Shriners Hospitals for Crippled Children v. Zrillic, 563 So.2d 64 (Fla. 1990), decisions in Florida and in other jurisdictions historically recognized a distinction in the protections to be afforded to property rights versus those afforded to testamentary rights. "The distinction those courts have drawn is that property rights are inalienable rights grounded in natural law, whereas freedom of testation is purely a creation of statute that did not exist at common law." Id. at 67; see also Evin Netzer, Florida Constitutional Law: Demise of the Common Law Distinction Between Testamentary and Property Rights, 43 Fla. L.Rev. 153, 156 (Jan. 1991) ("[C]ourts historically have viewed testamentary rights as emanating from the legislature, and other real property rights as being fundamental.").
In Zrillic, however, the Florida Supreme Court rejected this dichotomy as arising from "long-abandoned feudal notions of property" and concluded that the testamentary disposition of property was "a specifically expressed [Florida] constitutional property right." Zrillic, 563 So.2d at 67-68. The court thus afforded testamentary rights the same constitutional protections normally provided to other real property rights.
The specific question presented in Zrillic was whether Florida's mortmain statute, then codified at section 732.803, Florida Statutes (1985), violated article 1, section 2 of the Florida Constitution by impermissibly infringing on the decedent's testamentary rights. Generally speaking, the mortmain statute provided that a lineal descendant or spouse could set aside or avoid a testamentary devise that a decedent made to a charitable organization shortly before the decedent's death, thus redirecting that devise back into the probate estate, presumably for the benefit of that descendant or spouse. In Zrillic, the decedent, shortly before her death from a lingering illness, had expressly sought to disinherit her "promiscuous" daughter in favor of providing the residue of her estate to the Shriners Hospital for Crippled Children. 563 So.2d at 65-66.
The Florida Supreme Court held that the mortmain statute violated the expressed constitutional right provided by article I, section 2, to "acquire, possess and protect property." Id. at 66-69 (quoting art. I, § 2, Fla. Const.). The court acknowledged that these rights are not absolute. Rather, they are "held subject to the fair exercise of the power inherent in the State to promote the general welfare of the people through regulations that are reasonably necessary to secure the health, safety, good order [and] general welfare." Id. at 68 (quoting Golden v. McCarty, 337 So.2d 388, 390 (Fla.1976)). The court thus framed the issue as "whether section 732.803 is reasonably necessary to limit the property rights guaranteed by article 1, section 2 of the Florida Constitution." 563 So.2d at 68 (emphasis added).
In addressing whether the mortmain statute was "reasonably necessary," the court first examined the rationales provided for the statute. The court explained that although charitable devises were once disfavored because of certain prevalent abuses, society's attitudes toward charitable devises had changed and such devises were viewed in a more favorable light. As such, the only remaining rationales behind the mortmain statute were to protect a testator's family from disinheritance and to prevent undue influence by a charitable organization over a testator "under the apprehension of impending death." Zrillic, 563 So.2d at 69. The court rejected these rationales. "Although it may be reasonable *4 for the legislature to protect family members who are dependent or in financial need, it is unreasonable to presume, as the statute seems to do, that all lineal descendants are dependents, in need, or are not otherwise provided for." Id. Further, the court noted, "Florida law is replete with protections for surviving family members who may have been dependent on the testator," including the elective share. Id. In addition, the court found adequate protections within the Probate Code to protect against concerns of undue influence. Finally, the court concluded, "The statute is not reasonably necessary to accomplish the asserted state goals at the cost of offending property interests protected by the Florida Constitution." Id. (emphasis added).
Judith argues that the principles established in Zrillic apply to invalidate Florida's current elective share statutes. Essentially, she interprets Zrillic as recognizing a fundamental right to devise of one's property through testamentary instruments that can only be curtailed by the government through a narrowly tailored law when the law is "reasonably necessary to secure the health, safety, good order [and] general welfare." See Zrillic, 563 So.2d at 68 (citing Golden, 337 So.2d at 390); see also Dep't of Law Enforcement v. Real Property, 588 So.2d 957, 964 (Fla.1991) (citing Zrillic for the proposition that article I, section 2, protects all incidents of property ownership from infringement by the state unless regulations are "reasonably necessary" to secure public welfare; holding that the state must employ the "least restrictive alternative" to achieve its legitimate objectives where such rights are at stake); In re Forfeiture of 1969 Piper Navajo, 592 So.2d 233, 236 (Fla.1992) (invalidating statute because it was not "narrowly tailored" to the state's objectives; "[S]o long as the public welfare is protected, every person in Florida enjoys the right to possess property free from unreasonable government influence."). Judith recognizes Florida's long-held and legitimate public policy of protecting the financial security of surviving spouses, see Via v. Putnam, 656 So.2d 460, 461 (Fla.1995), but argues that the elective share statutes are not sufficiently narrowly tailored to further this policy, particularly because they apply regardless of the perceived needs of the surviving spouse.
There is no doubt that some of Justice Barkett's language in Zrillic seems expansive enough to support the arguments made here.[2] That language was taken *5 from Golden, 337 So.2d 388, wherein the Florida Supreme Court explained:
All contract and property rights are held subject to the fair exercise of the power inherent in the State to promote the general welfare of the people through regulations that are reasonably necessary to secure the health, safety, good order, general welfare. "And the enforcement of uncompensated obedience to a regulation established under this power for the public health or safety is not an unconstitutional taking of property without compensation or without due process of law." Atlantic Coast Line R.R. Co. v. City of Goldsboro, 232 U.S. 548, at 558, 34 S.Ct. 364, at 368, 58 L.Ed. 721 (1914). Appellant submits and we agree that the constitutional right of every person to pursue a business, occupation, or profession is subject to the paramount right of government through the police power to impose reasonable restrictions as may be required for the protection of the public.

Id. at 390 (emphasis added).
The problem with the quote in Golden, however, as evidenced by its application in Zrillic, is that the language used permits two possible distinct analyses using the same concept of "reasonableness": whether regulations are "reasonably necessary" to protect the general welfare versus whether a regulation is a "reasonable restriction as may be required for the protection of the public." Golden, 337 So.2d at 390. Whether a statute is "reasonably necessary" to protect the public may be a far more rigorous analysis than whether a statute is a "reasonable restriction" on certain property rights to promote a legitimate government purpose.
Fortunately, the Florida Supreme Court has recently clarified that the test to be applied in evaluating statutes and regulations that infringe on property rights or testamentary rightsat least those that do not require the absolute destruction of propertyis not the "least restrictive means" test urged by Judith here, but rather a "reasonable relationship" test. In Haire v. Florida Department of Agriculture & Consumer Services, 870 So.2d 774, 783 (Fla.2004), the court explained,
[W]e have held that "[a]ll ... property rights are held subject to the fair exercise of the [police] power," Golden v. McCarty, 337 So.2d 388, 390 (Fla.1976) (emphasis supplied), and have used the reasonable relationship test ... to evaluate statutes and regulations that infringe on property rights.
Id. (footnotes omitted).
As support for this proposition, the court expressly cited Zrillic. Haire, 870 So.2d at 783 n. 9. In reconciling the cases, therefore, the Florida Supreme Court has now established that the "reasonable relationship" or "rational basis" standard applies to review a statute that potentially infringes on (but does not destroy entirely) property or testamentary rights.
As further explained in Haire,
Under this standard of review ... a "state statute must be upheld ... if there is any reasonable relationship between the act and the furtherance of a valid governmental objective." Lane v. Chiles, 698 So.2d 260, 262 (Fla.1997) (emphasis supplied). Specifically, with respect to substantive due process, a statute is valid if it "bears a rational relation to a legitimate legislative purpose in safeguarding the public health, safety, or general welfare and is not discriminatory, arbitrary, or oppressive." Chicago Title Ins. Co. v. Butler, 770 So.2d 1210, 1215 (Fla.2000).
870 So.2d at 782.
As noted above and acknowledged by Judith, this state has a "strong public policy *6 concerning the protection of the surviving spouse of [a] marriage in existence at the time of the decedent's death." See Via, 656 So.2d at 461. The provisions of the elective share statute thus serve a legitimate legislative purpose. The statutes are rationally related to that purpose in that they seek to provide any surviving spouse who has not waived such protections a minority share in the assets of the decedent in the event that spouse did not receive as much through testamentary dispositions.[3] This legislative scheme has strong historical roots in the common law, in existence before the enactment of our state constitution and undisturbed until now.
We therefore affirm the order on appeal.
SALCINES, J., and THREADGILL, EDWARD F., Senior Judge, Concur.
NOTES
[1] In the event any of these beneficiaries predeceased Mr. Magee, the trust provided, "[S]aid deceased beneficiary's distributive share shall pass to her lineal descendants who survive [Mr. Magee], per stirpes; but if there are no such living lineal descendants, then to the other named beneficiaries per stirpes, if living, or their lineal descendants if the other named beneficiaries are not living." Apparently, Mr. Magee's other daughter predeceased him.
[2] Indeed, it is the expanse of the holding on the constitutional protection afforded to testamentary rights that seems to have led Justices Grimes, McDonald, and Overton to concur in the result of the opinion but not in the constitutional analysis applied pursuant to article I, section 2 of the Florida Constitution. Zrillic, 563 So.2d at 71-73 (Grimes, concurring; McDonald, concurring in result, dissenting in part). Broadly applied, the language in Zrillic had the potential to shift the balance of power from the legislature to the courts based upon a state constitutional provision, creating a political environment similar to that which existed during the Lochner era under the federal doctrine of economic substantive due process. See, e.g., Day-Brite Lighting, Inc. v. Missouri, 342 U.S. 421, 423, 72 S.Ct. 405, 96 L.Ed. 469 (1952) (criticizing Lochner v. New York, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905), Coppage v. Kansas, 236 U.S. 1, 35 S.Ct. 240, 59 L.Ed. 441 (1915), and Adkins v. Children's Hosp. of D.C., 261 U.S. 525, 43 S.Ct. 394, 67 L.Ed. 785 (1923), and stating: "Our recent decisions make plain that we do not sit as a super-legislature to weigh the wisdom of legislation nor to decide whether the policy which it expresses offends the public welfare. The legislative power has limits... [b]ut the state legislatures have constitutional authority to experiment with new techniques; they are entitled to their own standard of the public welfare....")
[3] To the extent the amount of the elective share reflects a proportion of the spouse's estate, these provisions mimic to a certain extent the protections afforded to a spouse in a divorce who may be awarded alimony as possible and necessary to maintain the standard of living established during a marriage, not solely to protect that spouse from impoverishment. See § 61.08(2)(a), Fla. Stat. (2006).