LaROSE, Judge.
Andrea Lee, fiancée of Randy John Payne, appeals the trial court’s order dismissing her counter-petition for administration of Mr. Payne’s Colorado holographic will.[1] Ms. Lee wanted the will admitted *777 to ancillary probate in Pinellas County, where Mr. Payne owned three houses. We affirm the trial court’s order but certify to the Florida Supreme Court a question of great public importance.
Mr. Payne’s will left Ms. Lee one of the Florida houses, plus $40,000 from the sale of the other two. He devised the remainder of any sale proceeds to his father. Carol Jean Hope, the estate’s Colorado personal representative and Mr. Payne’s sister, filed a petition for probate administration in Pinellas County. She alleged that the holographic will was not executed in compliance with section 732.502(1), Florida Statutes (2010), and, thus, was not valid under section 732.502(2). The petition listed the estate’s only beneficiary as Mr. Payne’s minor daughter. The trial court appointed Ms. Hope as ancillary personal representative of Mr. Payne’s Florida estate. Ms. Lee filed a counter-petition for administration urging the trial court to accord full faith and credit to the Colorado court order admitting the will to probate there. See art. IV, § 1, U.S. Const. (“Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.”). The trial court appointed an attorney/guardian ad litem for the minor child. The attorney/guardian asserted that the will was invalid in Florida, making the minor child the only beneficiary of the Florida property under the laws of intestacy. See § 732.103 (providing that if there is no surviving spouse, entire intestate estate passes to decedent’s descendants).
Florida law requires wills to be signed by the testator and two witnesses:
732.502. Execution of wills.—
Every will must be in writing and executed as follows:
(1)(a) Testator’s signature.—
1. The testator must sign the will at the end; or
2. The testator’s name must be subscribed at the end of the will by some other person in the testator’s presence and by the testator’s direction.
(b) Witnesses. — The testator’s:
1. Signing, or
2. Acknowledgment:
a. That he or she has previously signed the will, or
b. That another person has subscribed the testator’s name to it, must be in the presence of at least two attesting witnesses.
(c) Witnesses’ signatures.-The attesting witnesses must sign the will in the presence of the testator and in the presence of each other.
(2) Any -will, other than a holographic or nuncupative will, executed by a nonresident of Florida, either before or after this law takes effect, is valid as a will in this state if valid under the laws of the state or country where the will was executed. A will in the testator’s handwriting that has been executed in accordance with subsection (1) shall not be considered a holographic will.
Section 734.104 provides that a foreign will that devises Florida real property and has been admitted to probate in another state may be admitted to probate here only if “[t]he will was executed as required by chapter 732.” § 734.104(l)(a), Fla. Stat. (2010).
There is no dispute that Mr. Payne signed his will without attesting witnesses. But, under Colorado law, his will was admitted to probate there because a holo *778 graphic will that is not signed by at least two witnesses or notarized is valid if “the signature and material portions of the document are in the testator’s handwriting.” Colo.Rev.Stat. § 16-11-502(2) (2010).[2]
Mr. Payne wrote out his will.
The trial court refused to give full faith and credit to the Colorado order admitting the will to probate because section 732.502(2) does not recognize holographic wills, even if they are valid in the state where executed. As a result, Mr. Payne’s Florida estate will pass to his minor child. See § 732.103 (providing that if there is no surviving spouse, entire intestate estate passes to decedent’s descendants). Ms. Lee argues that section 732.502(2) unconstitutionally restrains a testator’s right to devise property.
The federal Constitution grants no right to dispose of property by will. See In re Estate of Greenberg, 390 So.2d 40, 43 (Fla.1980). Florida recognized no such right until 1968. See art. 1, § 2, Fla. Const. (1968). Significant for our analysis is the 1944 opinion in Taylor v. Payne, 154 Fla. 359, 17 So.2d 615 (1944), overruled on other grounds by Shriners Hospitals for Crippled Children v. Zrillic, 563 So.2d 64 (Fla.1990). The Taylor testator executed a will, within six months of his death, leaving the proceeds from a contract and mortgage to his wife for her lifetime, with any balance still due after her death to a church. Id. at 616. Section 20 of the Probate Act of 1933 provided that if a testator had a spouse or descendants, any devise to a charity was invalid unless executed at least six months before the testator’s death. See id. at 617 (citing § 731.19, Fla. Stat. (1941)). The probate court found the bequest to the church invalid. Id. The church appealed, arguing that the statute unconstitutionally “deprive[d] the testator and the legatees of the right to receive, enjoy and dispose of property without due process of law, and denie[d] them the equal protection of the law in the acquisition and disposition of property.” Id. The supreme court affirmed, holding that no constitutional provision governed the right of testamentary disposition of property; any such right was statutory, without constitutional limitation on regulation. Id.
Taylor influenced the result in In re Estate of Olson, 181 So.2d 642 (Fla.1966), where the supreme court considered the issue now before us:
Whether or not an intelligently written will in the handwriting of the deceased, *779 who was fully competent and cognizant, will be recognized, or voided for the sole reason of the absence of two witnesses, as required in Section 731.07 F.S.; and whether or not such statutory requirement invades and violates constitutional rights.
Id. at 642. Olson affirmed the trial court’s order denying probate of a holographic will. Id. at 644. Citing Taylor, the supreme court held that, although the governing statute may have thwarted the testator’s intent, the statute was constitutional, subject only to legislative change. Id. at 643. The court noted that the statute’s intent in requiring two witnesses’ attestation was “to assure [the will’s] authenticity and to avoid fraud and imposition.” Id.
A 1968 amendment to the Florida Constitution added article I, section 2: “All natural persons are equal before the law and have inalienable rights, among which are the right ... to acquire, possess and protect property....” Revisiting Taylor in Zrillic, the supreme court addressed whether a statutory invalidation of charitable devises made within six months of the testator’s death was unconstitutional. 563 So.2d 64; see § 732.803, Fla. Stat. (1985); Taylor, 154 Fla. 359, 17 So.2d 615. The supreme court overruled Taylor, holding that article I, section 2 of the Florida Constitution protected the right to devise property. Zrillic, 563 So.2d at 67-69. The court observed that the statute, which protected families from disinheritance by testators influenced by charitable organizations, was “not reasonably necessary to accomplish the asserted state goals at the cost of offending property interests protected by the Florida Constitution.” Id. at 69. The court stated that “[although it may be reasonable for the legislature to protect family members who are dependent or in financial need, it is unreasonable to presume, as the statute seems to do, that all lineal descendents are dependents, in need, or are not otherwise provided for.” Id.
Zrillic also held that section 732.803 violated the equal protection guarantees of article I, section 2 of the Florida Constitution and the Fourteenth Amendment of the United States Constitution. Id. “Equal protection analysis requires that classifications be neither too narrow nor too broad to achieve the desired end.” Id. at 69-70. “Section 732.803 create[d] a class consisting of only those testators who die[d] within six months after executing a •will that devised property to a [charity].” Id. at 70. The statute was underinclusive because it did not include other charitable gifts made -without proper deliberation or legacies to other “persons who are in an equal position with religious persons to influence a testator.” Id. at 70 & n. 7 (“Modern policies ... do not seem to suggest that testators need more protection against charities than against greedy relatives.”). The statute also was overinclu-sive because it voided bequests of testators who “were not impermissibly influenced” by the charities and testators whose relatives were not dependent or financially needy. Id. Thus, the statute drew no rational distinction and was “neither just nor reasonably related to a legitimate governmental purpose”; its effect was “to defeat the testator’s express intent without any reasonable relation to the evil sought to be cured.” Id. Important for our analysis, the supreme court left Olson intact.
We acknowledged in In re Estate of Magee, 988 So.2d 1, 5 (Fla. 2d DCA 2007), Zrillic’s holding that the testamentary disposition of property is a constitutionally protected right. In Magee, we addressed whether Florida’s elective share statutes, sections 732.201 to 732.2155, Florida Statutes (2002), violated article I, section 2 of *780 the Florida Constitution. 988 So.2d at 2. We recognized that the legislative purpose of the statutes was “to provide any surviving spouse who has not waived such protections a minority share in the assets of the decedent in the event that spouse did not receive as much through testamentary dispositions.” Id. at 6. Applying a rational basis standard, we upheld the constitutionality of the elective share statute because we found a reasonable relationship to its legitimate public policy objective of protecting a surviving spouse. Id. at 5-6.
Obviously well acquainted with the development in Florida of constitutional protections for the disposition of property, Ms. Lee now asks us to revisit the continued validity of Olson. Recall that Olson observed that requiring two witnesses to a will was “to assure its authenticity and to avoid fraud and imposition.” 181 So.2d at 643. Holographic wills, under Olson, are not as reliable as wills executed in the presence of witnesses. Ms. Lee challenges that assumption and argues that handwritten holographic wills are inherently reliable. “[I]t is exceedingly difficult to forge a successful counterfeit of another’s handwriting throughout an entire document, so that the requirement that the document, or at least its material provisions, be entirely in the testator’s or testatrix’s handwriting, affords protection against a forgery.” Jay M. Zitter, Annotation, Requirement that Holographic Will, or its Material Provisions, Be Entirely in Testator’s Handwriting as Affected by Appearance of Some Printed or Written Matter Not in Testator’s Handwriting, 37 A.L.R. 528, § 2[a] (1985) (footnotes omitted). Ms. Lee notes that twenty-six states allow holographic wills, with statutory provisions to assure reliability. She contends that no rational basis exists to deny probate of all holographic wills without allowing any inquiry into authenticity.
The trial court based its order on Olson, which, unfortunately for Ms. Lee, has not been overruled. She urges us to ignore Olson in light of article I, section 2 of the Florida Constitution and Zrillic. Although the 1968 constitutional amendment and Zrillic may have addressed what some might have viewed as overly paternalistic statutory choices, section 732.502 focuses not on the testator’s choices in making a devise; rather it operates to assure authenticity and reliability. It promotes fulfillment of the testator’s intent. We cannot say that this is an impermissible public policy choice. Moreover, we are not free to jettison binding precedent. See Valdes v. State, 3 So.3d 1067, 1077 (Fla.2009); Chames v. DeMayo, 972 So.2d 850, 855 (Fla.2007); Dorsey v. State, 868 So.2d 1192, 1199 (Fla.2003) (“[T]he doctrine of stare decisis ... yields only upon a significant change in circumstances after the adoption of the legal rule, or when there has been an error in legal analysis.”). Even our supreme court will depart from precedent only when “ ‘necessary to vindicate other principles of law or to remedy continued injustice’ ” or “when an established rule has proven unacceptable or workable in practice.” Tiara Condo. Ass’n v. Marsh & McLennan Cos., 110 So.3d 399, 407 (Fla.2013) (quoting Allstate Indem. Co. v. Ruiz, 899 So.2d 1121, 1131 (Fla.2005)). In Strand v. Escambia County, the supreme court employed the following factors in considering whether the presumption in favor of stare decisis may be overcome:
“(1) Has the prior decision proved unworkable due to reliance on an impractical legal ‘fiction’? (2) Can the rule of law announced in the decision be reversed without serious injustice to those who have relied on it and without serious disruption in the stability of the law? And (3) have the factual premises underlying the decision changed so drastically *781 as to leave the decision’s central holding utterly without legal justification?”
992 So.2d 150, 159 (Fla.2008) (quoting N. Fla. Women’s Health & Counseling Servs., Inc. v. State, 866 So.2d 612, 637 (Fla.2003)); accord Valdes, 3 So.3d at 1077. This test, however, is not for us to apply. We are constrained by precedent unless changed by the supreme court.
Olson controls. Therefore, we affirm, but we certify the following question of great public importance to the supreme court:
DO SECTIONS 732.502(2) AND 734.104(a) VIOLATE ARTICLE I, SECTION 2 OF THE FLORIDA CONSTITUTION BY CATEGORICALLY DEFEATING THE INTENT OF THE TESTATOR OF A HANDWRITTEN HOLOGRAPHIC WILL WITHOUT A RATIONAL RELATION TO THE FRAUD IT SEEKS TO CURE?
Affirmed; question certified.
KELLY and BLACK, JJ., Concur.

. The will was executed in Colorado and admitted to probate there. Section 15 — 11— 502(2), Colorado Revised Statutes (2010), provides that a will that is not signed by at *777 least two witnesses or acknowledged by the testator before a notary public or other authorized individual is valid as a holographic will if “the signature and material portions of the document are in the testator’s handwriting."

. Colorado follows Uniform Probate Code § 2-502, which provides:
2-502. Execution; Witnessed or Notarized Wills; Holographic Wills.
(a)[Witnessed or Notarized Wills.] Except as otherwise provided in subsection (b) and in Sections 2-503, 2-506, and 2-513, a will must be:
(1) in writing;
(2) signed by the testator or in the testator’s name by some other individual in the testator’s conscious presence and by the testator's direction; and
(3) either:
(A) signed by at least two individuals, each of whom signed within a reasonable time after the individual witnessed either the signing of the will as described in paragraph (2) or the testator’s acknowledgment of that signature or acknowledgement of the will; or
(B) acknowledged by the testator before a notary public or other individual authorized by law to take acknowledgements.
(b) [Holographic Wills.] A will that does not comply with subsection (a) is valid as a holographic will, whether or not witnessed, if the signature and material portions of the document are in the testator's handwriting.
(c) [Extrinsic Evidence.] Intent that a document constitute the testator’s will can be established by extrinsic evidence, including, for holographic wills, portions of the document that are not in the testator's handwriting.