GEORGE T. HOOPER, *Appellant*, vs. H. D. STOKES, as Executor of the Last Will and Testament of GEORGE C. HOOPER, deceased, *Appellee*.

145 So. 855.

146 So. 668.

En Banc.

Opinion filed January 9, 1933.

Petition for rehearing denied February 7, 1933.

*R. L. Anderson* and *D. Niel Ferguson,* for Appellant;
*W. E. Smith,* for Appellee.

TERRELL, J.—George C. Hooper died testate December 12th, 1928, leaving an only son, George T. Hooper, surviving, his wife having divorced him May 11, 1926. The senior Hooper executed his Will July 10, 1926, in which after providing for the payment of his debts and funeral expenses, he divided the remainder of his property equally among two friends living in Baltimore and a half sister living in Washington, D. C. He provided the following legacy in favor of George T. Hooper.

"To my son, George T. Hooper, I bequeath a transcript of the divorce proceedings of Maud G. Hooper against me. This transcript contains the false testimony that he gave against me. I trust that an occasional perusal of same will recompense him for any pecuniary loss that his act has caused him. Furthermore I direct that the Executor of my estate procure from each legatee, as named above, an affidavit that he or she will under no circumstances render any financial aid to the above mentioned George T. Hooper. The share or shares of any legatee who refuses to make such an affidavit shall revert to the Children's Home Society of Florida, at Jacksonville."

This suit was instituted December 7, 1929, by George T. Hooper to revoke the probate of the Will of George C. Hooper on the ground that the testator was suffering from monomania or an insane delusion at the time the Will was executed. The probate judge after taking testimony and hearing argument of counsel, entered his decree granting the prayer of the petition to revoke the probate of the Will

which decree was on appeal, reversed by the Circuit Court. The instant appeal is from the decree of the Circuit Court.

The ultimate question brought here for our determination is whether or not the evidence shows that the testator was suffering from and was dominated by monomania or an insane delusion at the time he executed his Will.

Monomania, sometimes designated paranoia, has reference to a craze or mania for a single object or class of objects. The subject of it may be perfectly sane as to all other objects. As with an insane delusion, monomania presupposes a species of mental disease. A mere belief in a state of facts however imperfect or illogical will not support an insane delusion. It must be the off-spring of an unsound or deranged condition of the mind. Any belief which arises from reasoning from a known premise however imperfect the process may be, or how illogical the conclusion reached, is not an insane delusion. If one of normal faculties can put himself in the place of the subject of an insane delusion and conceive how he could believe that which he is charged with believing and still be in full possession of his faculties an insane delusion is not established neither will such a delusion be supported on undue prejudice if based on any kind of reasoning.

An insane delusion has been defined as a spontaneous conception and acceptance as a fact, of that which has no real existence except in imagination. The conception must be persistently adhered to against all evidence and reason. It has also been defined as a conception originating spontaneously in the mind without evidence of any kind to support it, which can be accounted for on no reasonable hypothesis, having no foundation in reality and springing from a diseased or morbid condition of the mind. Numerous other definitions might be cataloged but the ultimate test applied by all is that the aberration must be such as indicates a diseased or deranged condition of the mind.

Owen vs. Crumbaugh, 228 Ill., 380, 81 N. E. 1044; Smith vs. Smith, 48 N. J. Eq. 566, 25 Atl. 11; Wait vs. Westfall, 161 Ind. 648, 68 N. E. 271; Martin vs. Thayer, 37 W. Va. 38, 16 S. E. 489; Benoist vs. Murrin, 58 Mo. 307; Mullins vs. Cottrell, 41 Miss. 291; Potter vs. Jones, 20 Ore. 239, 25 Pac. 769; Rush vs. Megee, 36 Ind. 69; Words and Phrases (Second Series) Vol. 2, 1092.

An insane delusion has frequently been held in this country as ample ground for voiding a Will though the testator's capacity may be otherwise unimpeached. Dibble vs. Courrier, 142 Ga. 855, 83 S. E. 949, Ann. Case 1916C, 1 Text 8, 12; 1 Schouler on Wills, Executors and Administrators (16th Ed) Section 136; 25 Am. & Eng. Ency. of Law 983, 985; Orchardson vs. Cofield, 171 Ill. 14, 49 N. E. 197, 40 L. R. A. 256.

Whether or not the testator here was afflicted with an insane delusion must turn on the interpretation of the evidence adduced. This court is committed to the rule that the findings of fact by a probate court on conflicting evidence should ordinarily not be disturbed on appeal to the circuit court when there is ample evidence to sustain the findings; yet, where the probate judge misapprehended the legal effect of the evidence as an entirety, his findings should not be sustained merely because there is evidence that is contradicted on which the findings may be predicated. Hamilton vs. Morgan, 93 Fla. 311, 112 So. 80.

The evidence shows that the testator was about fifty-five years of age at the time he executed his Will. He was a man of common school education, had read considerably, had little toleration for the views of others that ran counter to his, was early left an orphan, was a jeweler and watch repairer by trade and knew much of the sordid but little of the refinements of life. He was stubborn, ruggedly honest, self opinionated, argumentative, morose and miserly to the point of niggardliness. He was married to the

Mother of the contestant in 1901 and each was intolerant of the views of the other. Both were devoid of the spirit of compromise or concession, were incompatible and had little in common. She nagged and he carried the proverbial chip on his shoulders; so their troubles began early and continued until they culminated in the divorce about two years before his death. The testator appears to have evidenced some disappointment at the sex of the contestant and this disappointment was intensified as the years passed due to the morose, self opinionated behavior of the father and the conduct of the son, culminating in an open breach at the time of the divorce proceeding, when father on the one hand and mother and son on the other, took up their places of abode in the same block, but in different dwellings where they lived till the death of the father without the contestant speaking to him. The record is replete with instances in which the father, mother, and son all exhibited a nasty, vindictive disposition toward each other, the mother and son being arrayed against the father and vice versa. The testator is shown to have addressed his son, the contestant, in humiliating terms and at one time was said to have spoken of him in language too lecherous and indecent to quote.

The probate judge reviewed the facts at length, revoked the probate of the Will, and bottomed his opinion on the view that any father who would speak of his son in such indecent and lewd manner as was charged in this case was so unnatural as to be motivated by an insane delusion. The language charged to have been used was about as vile and indecent as is possible of synthesis to one whose concepts are those of the chaster society of the drawing room, but on the outer fringe of society where ethical and moral concepts are crude, where "skin" rather than "contract" is the popular past time, language of like import is not infrequent.

Chastity of diction is not a determinant of testamentary capacity, but if it was this one isolated instance testified to in reference to the use of lewd language as descriptive of his son, is not sufficient to prove that the testator was afflicted with an insane delusion at the time he executed his Will, neither would it do so if taken in connection with all the other testimony brought out against him. It is not connected with the date or place of making the Will and if true, it is indicative of nothing more than a depraved mind. There is a vast difference between a vulgar or a depraved mind and a diseased mind. The latter is characterized by decay and spontaneous conceptions without any basis for them in fact or reason while the former may be strong and vigorous.

The overwhelming weight of the evidence supported testamentary capacity. Aside from the evidence the very terms of the Will in favor of the contestant show testamentary capacity. The well reasoned conclusion of that provision to definitely and certainly cut off the contestant must have been the product of a vigorous and not a diseased mind. The will and the proof are conclusive that it was induced by bitter resentment to the rebuffs of the wife and the son for which they were not altogether responsible. They had voluntarily turned on and ignored him, the wife had divorced the father and the son had given what the father conceived to be false testimony against him in the divorce suit. So far as the record discloses every vestige of reverence and devotion passing from mother and son to father was gone and without hope of reconciliation so far as the son was concerned. Under such circumstances it is not difficult to divine the reason for the Will he made. It may be harsh and unnatural, but that does not make it illegal, and human kind is so constituted that when it retaliates on its own blood, it often goes to extremes that it

would not compass if dealing with a mere friend who had become estranged.

Barring illegal purposes, a testator has the legal right to direct the course of his property after death. He may disinherit his children if he desires and bequeath his estate to strangers, but in any event his express intent must determine the interpretation of his Will and not what others more sophisticated may think as to his moral duty. We think, therefore, the probate judge misinterpreted the legal effect of the evidence as a whole so the decree of the circuit court is affirmed.

Affirmed.

BUFORD, C.J. AND WHITFIELD, BROWN AND DAVIS, J.J., concur.

ELLIS, J., absent on account of sickness.

PER CURIAM.—The motion to recall the mandate in this cause and supplemental petition for rehearing have been examined. It is suggested that the Court did not give proper consideration to Broughton vs. Knight, et al., Law Reports, 3 Probate and Divorce, 64, including other decisions listed in the brief of appellant. It is also suggested that in our former opinion we gave greater weight than we should have to the decision of the chancellor and that we failed to give the consideration we should have given to the decision of the probate judge. Other instances are pointed out in which it is contended that we did not give the consideration we should have given to the brief and questions raised by appellant.

On account of the unusual condition this cause presents we have taken the pains to thoroughly examine the record again in the light of each question raised by appellant's supplemental petition and we are unable to see that any error was committed or question overlooked. We gave most thorough consideration to every case presented and every question raised. In its last analysis it was a question of

testamentary capacity. The Will was harsh and is not the Will we would have made, but we are bound by the record and in our view it fails to disclose that the testator lacked the capacity to make it. To have written our views on all the questions raised would have made the opinion labored and would have served no useful purpose.

Motion denied.

DAVIS, C.J. AND WHITFIELD, TERRELL, BROWN AND BUFORD, J.J., concur.