LILES, Judge.
The will of Grace Elizabeth Supplee dated July 29, 1965 was admitted to pro *489 bate in the County Judge’s Cotirt of Pinel-las County. Dorothy H. Boyd, the stepdaughter of Grace Elizabeth Supplee, contested the admission of the said will for probate and asked the County Judge to revoke probation of the will. The County Judge, after hearing all the testimony in the case, entered its order which among other things refused to revoke the probation of the July 29, 1965 will.
The trial judge entered its order dated the 12th day of May, 1970, and this order was appealed. The appellant assigns as error the admission of the 1965 will to probate and the court’s refusal to allow revocation.
We have studied the briefs, the record and all other papers filed in this matter and find the trial judge did not commit reversible error. We therefore approve and use his order as our opinion in this cause as follows:
“This estate is now before the court on revocation of probate proceedings initiated by DOROTHY H. BOYD, step-daughter of the above named decedent. After taking extensive testimony and the completion of final arguments of counsel for the respective parties on May 6th 1970 this cause was then taken under advisement. The court has now carefully reviewed the numerous exhibits admitted into evidence; has fully considered all testimony and the oral arguments of counsel and being fully advised in the premises, now makes and enters its Order in this cause, as follows:
“This court finds that GRACE ELIZABETH SUPPLEE died domiciled in Pinel-las County, Florida, on November 30th 1968, at the age of seventy-nine (79) and survived by her brother, DOUGLAS O. MEAD, of New Jersey, as her sole heir-at-law. She was married to SAMUEL G. SUPPLEE in 1944 and in 1948 they moved from the north to Florida where he subsequently died in 1956. The petitioner herein is the daughter of the said SAMUEL G. SUPPLEE by a former wife.
“The relationship between the petitioner step-daughter and the decedent was one of apparent close affection on the part of each. On numerous occasions after SAMUEL SUPPLEE’S death the decedent referred to the step-daughter as being her ‘daughter’. On many occasions she indicated to her friends and neighbors that her estate would go to the step-daughter. There were intermittent exchanges of visits between the decedent and the step-daughter who lived in a northern state. As evidence of such affection for the stepdaughter, commencing shortly after her husband’s death in 1956, to and including October 18, 1963, the decedent executed a number of testamentary instruments, the general pattern of which consisted of various bequests to others but with the major portion of her estate going to the stepdaughter as the residuary beneficiary. Such was the pattern of the October 18, 1963 testamentary instrument which is the instrument the petitioner is attempting to establish as the true last will and testament of this decedent.
“The relationship between the decedent and her brother, DOUGLAS, consisted mainly of occasional exchanges of letters and telephone calls but no visits. In the series of wills above referred to the brother was left little, if any, of the decedent’s estate. Whether or not such omission was the result of a long standing feud between the decedent and her brother’s wife, resulting from an incident which took place long before the marriage of the decedent, is unknown but the evidence does clearly indicate that after her serious illness hereinafter referred to, the long standing dislike of the sister-in-law seemed to soften in some degree and the contacts by letter and telephone calls between the decedent and her brother increased.
“Subsequent to the execution of the October 18, 1963 instrument the decedent suffered several serious heart attacks requiring intermittent hospitalization and nursing care and on April 28, 1965 this decedent was adjudged in this court as be *490 ing incompetent by reason of chronic brain syndrome due to arteriolosclerosis, with periods of confusion and disorientation and impaired judgment, with propensities of impaired ego function. Thereupon, her long time attorney and friend, A. T. COOPER, JR., was appointed and qualified as guardian of her estate and of her person. Such adjudication and the attendant guardianship proceedings thereafter continued without interruption, until the decedent’s death in 1968.
“During the continuation of such incompetency adjudication and the attendant guardianship, the decedent executed her will of July 29, 1965, the main thrust of such instrument as opposed to her prior will being that she therein divided the residue of her estate equally between the petitioning step-daughter, her brother DOUGLAS O. MEAD and her niece, JANICE ALLO-WAY, who was the daughter of DOUGLAS O. MEAD. After her death such 1965 will was admitted to probate in this court and thereafter the pending petition for relocation of the probate of such will was filed herein by the step-daughter on the ground of lack of testamentary capacity by the decedent at the time she executed such instrument.
“It is the opinion of this court that in the trial of this cause the respondents herein fully met their initial burden of establishing, prima facie, the due execution of such will and that the petitioner thereupon established the decedent’s adjudication of incompetency at a time prior to the execution of such will. Thus, the burden was then shifted back to the respondents to show, by a preponderance of the evidence, that the decedent executed such will during a lucid interval. It might be well to point out at this time that the main thrust of the petitioner’s contention of lack of testamentary capacity is that such will was the result of an insane delusion on the part of the decedent that the petitioner had stolen certain articles from the decedent’s home.
“Florida law is well settled as to the requisites of testamentary capacity. Florida law is likewise well settled to the effect that although an incompetency adjudication creates a presumption of lack of testamentary capacity as to any will thereafter executed during the continuance of such adjudication, that such presumption may be overcome on proof that the will was executed by the adjudged incompetent during a lucid interval. This court also recognizes that a will should be held invalid for lack of testamentary capacity if such is executed as the result of an insane delusion.
“With the foregoing principles in mind and after careful consideration of all of the testimony and exhibits herein and the arguments of respective counsel, it is the considered opinion of this court that the respondents herein have, by a preponderance of the evidence, proven that the will of this decedent dated July 29, 1965 was executed by the decedent during a lucid interval and that, accordingly, such instrument should be adjudged to be her true last will and testament.
 “This court arrived at the foregoing conclusion only after careful consideration of all applicable evidence touching upon the petitioner’s contention that such will was the result of an insane delusion and concluding therefrom that the over all evidence did not bring this case within the purview of existing law relative to what constitutes an insane delusion. As is pointed out in the Florida Appellate decision of HOOPER vs STOKES [107 Fla. 607], 145 Southern 855 (Fla.1933) any belief which arises from reasoning from a known premise, however imperfect the process may be, or how illogical the conclusion reached, is not an insane delusion and in the case at bar evidence adduced from the own witnesses of the petitioner established not only that after a stay of some duration in the decedent’s home, the petitioner then closed and lock *491 ed up such home, advising the decedent thereof, but also, that when the decedent next returned to such home from the nursing home, at least some of the articles complained about by the decedent, such as a substantial amount of linen and two “gold” ice cube trays, were in fact missing from her home. As this court understands the law relative to insane delusions, it is not the truth or falsity of the “belief” but, instead, whether or not such belief arose from reasoning from a known premise.
“The issue in this case was whether or not this decedent possessed testamentary capacity at the time she executed the will under attack and an exceptionally strong case was made by the respondents in favor of an affirmative finding on that point, as is evidenced not only by the extensive testimony of the only three (3) living persons who were present at the time of the execution but, in fact, by other witnesses.
“It is true that the will under attack was clearly a deviation on the part of the decedent from an avowed donative intent of long standing to leave the residue of her estate to the petitioner. However, the disposition of such residue as provided for in the will cannot be said to be unnatural, such as in the case of a stranger. It should also be recognized that the will under attack was executed by this decedent after a series of severe heart attacks and it is generally recognized that when a person is faced with the stark reality of meeting his maker, that person is prone to forget the past petty annoyances or prejudices and to consider basic values.
“In accordance with the foregoing it is hereby:
“ORDERED AND ADJUDGED by this court as follows:
“1. That the petition for revocation of probate as filed herein by the petitioner be, and such petition is hereby denied.
“2. That the several motions or objections made during the progress of this trial, on which this court reserved its decision be, and such are hereby denied.”
The order of the trial judge is therefore affirmed.
PIERCE, C. J., and MANN, J., concur.