433 So.2d 1349 (1983)
In re the ESTATE OF Francis N. EDWARDS, Deceased.
Louella EDWARDS, Juanita Ensley Mattox, Nellie Durfee and Ethel Rebecca Edwards, Appellants,
v.
CITIZENS NATIONAL BANK OF LEESBURG and Richard Vance Freeman, Appellees.
No. 82-1445.
District Court of Appeal of Florida, Fifth District.
July 7, 1983.
*1350 P.B. Howell, Jr., of Howell & Taylor, P.A., Leesburg, for appellants.
Mary M. McDaniel of Ford & Minkoff, P.A., Tavares, for appellees.
ORFINGER, Chief Judge.
The issue on appeal is whether the decedent had testamentary capacity when he executed his last will and testament. The trial court rejected a petition to revoke probate of the will and we affirm.
Francis N. Edwards died in Leesburg, Florida, on November 3, 1981. His last will, dated October 29, 1981, devised his entire estate to the appellee Richard Freeman, a casual employee of five years. Soon after the will was admitted to probate, the testator's mother and sisters filed a Petition for Revocation of Probate and for Establishment of Probate of a Prior Will dated June 23, 1981. After a hearing, final judgment was entered denying the petition for revocation and this appeal followed.
Appellants contend that Francis N. Edwards lacked testamentary capacity to execute his last will six days before his death. It is well settled that a testator is determined to be of "sound mind" when he has the ability to mentally understand in a general way (1) the nature and extent of the property to be disposed of, (2) the testator's relation to those who would naturally claim a substantial benefit from his will and, (3) a general understanding of the practical effect of the will as executed. In re Wilmott's Estate, 66 So.2d 465, 467 (Fla. 1953); In re Estate of Dunson, 141 So.2d 601 (Fla. 2d DCA 1962).
By pre-trial stipulation, the parties here established that Francis N. Edwards understood in a general way both the nature and extent of his property to be disposed of by his will and who the members of his family were at the time the will was *1351 executed. Therefore, the only element of testamentary capacity remaining for consideration was whether Edwards understood the practical effect of the will as executed. Appellants specifically contend that Francis Edwards was suffering from organic brain syndrome and insane delusions when he executed his last will and, thus, lacked the necessary testamentary capacity.
The testator had a history of chronic heart disease, dating back to at least 1972, when he suffered a heart attack. On June 17, 1981, he underwent quadruple by-pass heart surgery and was discharged from the hospital on July 2, 1981. Appellants argue that there was more than sufficient evidence that the testator's arteriosclerosis had progressed to such a state that it affected his mental capacity. There was medical testimony from decedent's personal physician to the effect that the decedent was not of sound mind at the time he executed his will because of his arteriosclerotic condition. However, there was other medical testimony from two physicians who saw the testator on November 2 and 3 of 1981, a few days after the execution of his will, both of whose testimony would justify the finding that the testator did have testamentary capacity at the time he executed his will and that there was no indication of brain cell damage or cell death. Finally, two psychiatrists testified to the testator's capacity. Respondent's psychiatrist described the effect of organic brain syndrome upon signatures, concluding that Francis' signature did not differ from one found on his 1979 will and neither signature indicated organic brain syndrome. Even petitioners' own psychiatric expert testified that the testator understood the practical effect of the will. Finally, the attorney who drew the will and employees in his office testified that the testator appeared in full possession of his faculties when the will was executed and understood the effect of the will. We hold that this evidence was more than sufficient to support the trial court's finding that decedent had the testamentary capacity to execute the will in question.
In furtherance of their argument that decedent suffered from insane delusions, appellants refer to a series of incidents which they contend is evidence of Francis Edwards' lack of testamentary capacity due to insane delusion, such as his mistrust of his own family and his suspicion of people in general, including customers at his place of business.
"Insane delusion" was defined by the Florida supreme court with great specificity in Hooper v. Stokes, 107 Fla. 607, 145 So. 855, 856 (Fla. 1933):
Monomania, sometimes designated paranoia, has reference to a craze or mania for a single object or class of objects. The subject of it may be perfectly sane as to all other objects. As with an insane delusion, monomania presupposes a species of mental disease. A mere belief in a state of facts, however imperfect or illogical, will not support an insane delusion. It must be the offspring of an unsound and deranged condition of the mind. Any belief which arises from reasoning from a known premise, however imperfect the process may be, or how illogical the conclusion reached, is not an insane delusion. If one of normal faculties can put himself in the place of the subject of an insane delusion and can see how he could believe that which he is charged with believing and still be in full possession of his faculties, an insane delusion is not established; neither will such a delusion be supported on undue prejudice if based on any kind of reasoning.
An insane delusion has been defined as a spontaneous conception and acceptance as a fact, of that which has no real existence except in imagination. The conception must be persistently adhered to against all evidence and reason. It has also been defined as a conception originating spontaneously in the mind without evidence of any kind to support it, which can be accounted for on no reasonable hypothesis, having no foundation in reality, and springing from a diseased or morbid condition of the mind.
Therefore, any belief which arises from reasoning based upon a known premise, however imperfect the process may be or however *1352 illogical the conclusion reached, is not an insane delusion. What is significant is not the truth or falsity of the belief, but rather whether such belief arose from reasoning from a known premise. In re Estate of Supplee, 247 So.2d 488 (Fla. 2d DCA 1971). It must also appear that the persons having a special claim to the testator's bounty are the object of the alleged delusions of the testator. Zinnser v. Gregory, 77 So.2d 611 (Fla. 1955).
As the trial judge indicated in his well-reasoned final judgment, there apparently has only been one Florida decision actually revoking a testator's will on the basis of an insane delusion. That case, In re Estate of Hodtum, 267 So.2d 686 (Fla. 2d DCA 1972), involved a decedent who executed a will leaving the residue of his estate to the Masonic Lodge of which he was a member. Soon thereafter, under the belief that the Masons had expelled him as a member, Hodtum removed the Lodge as a beneficiary of his will. His attorney, after checking these claims, advised the decedent that there was no basis for his belief. Nevertheless, the testator persisted in his belief and eventually had another attorney draw up a new will which was admitted to probate, but later revoked. On appeal, the appellate court affirmed, pointing out that there was no evidence to establish any basis for the decedent's belief.
Contrary to Hodtum, there is some basis sub judice for the testator's actions and his mistrust of his family. In fact, the appellants' own psychiatrist testified that there was a basis for the testator's feelings, beliefs and fears against his family. The evidence also indicated that the testator had always been suspicious and secretive and always protective of his property. The trial court found that decedent "... was naturally and justifiably concerned about shoplifting in the operation of his business due to the nature of that business and the physical layout of his store." Decedent was upset when some of his family members entered his property without his permission during one of his hospital stays, and on one occasion had ordered one of his brothers off his property. He suspected that an earlier break-in and robbery at his property had been engineered by another brother. He mentioned these incidents to the lawyer who drew the will in question here.
The trial court found other instances of differences between decedent and his siblings, including correspondence requesting that they stay off his property. Whether we agree that his feelings towards his brothers and sisters were justified is not the point at issue. What is determinative is the fact that those feelings arose from reasoning or a known premise. They had real existence and did not exist only in decedent's imagination. Viewing the evidence as a whole against the definition of insane delusion as stated in Hooper, we cannot disagree with the trial court's conclusion that decedent was not suffering from an insane delusion when he executed the will in question. As we agree with the trial court on the issue of testamentary capacity, we need not consider appellants' other issues which only become viable if the testator's last will was held to be invalid.
AFFIRMED.
COBB and FRANK D. UPCHURCH, Jr., JJ., concur.