586 So.2d 1221 (1991)
Marta ESPINOSA, As Natural Guardian and Next Friend of Patricia Azcunce, Natalie Azcunce, and Gabriel Azcunce, All Minors, and As Personal Representative of the Estate of Rene Azcunce, Deceased, and As Trustee of the Rene Azcunce Trust; and Lissette Azcunce, Appellants,
v.
SPARBER, SHEVIN, SHAPO, ROSEN & HEILBRONNER, et al., aPPELLEES.
No. 90-6.
District Court of Appeal of Florida, Third District.
September 17, 1991.
Rehearing Denied November 6, 1991.
*1222 Fred E. Glickman, Miami, for appellants.
Weissman & Lichtman and Jeffrey M. Weissman, Ft. Lauderdale, for appellees.
Before HUBBART, LEVY and GERSTEN, JJ.
HUBBART, Judge.
This is an appeal by a surviving spouse, as guardian of her three minor children and personal representative of the estate of her deceased husband, and by the deceased's adult daughter from an adverse final summary judgment which dismisses with prejudice their legal malpractice action below. We affirm the final summary judgment under review as to the claims of the deceased's children for lack of privity with the defendant lawyers, but reverse the said judgment as to the claim of the deceased's estate.

I
The relevant facts of this case are, for purposes of this appeal, entirely undisputed. Marta Espinosa, as the natural guardian of her three minor children Patricia, Natalie, and Gabriel Azcunce  and as personal representative of the estate of her deceased husband Rene Azcunce  together with Lissette Azcunce, the adult daughter of Marta and Rene (Marta has since remarried), brought a legal malpractice action against the defendant Howard Roskin and his law firm, Sparber, Shevin, Shapo, Rosen, & Heilbronner, P.A. In this action, the plaintiffs alleged that the deceased Rene Azcunce hired the defendant lawyers to prepare a will and later two codicils thereto; that the deceased in his will created a testamentary trust for his children, Natalie, Gabriel, and Lissette, but made no provision for after-born children; that the first codicil likewise made no provision for after-born children; that the testator's daughter Patricia was born after the will and first codicil were executed; that the second codicil made no provision for Patricia although she was alive at that point; that the deceased at all times intended to treat all his children, including Patricia, equally under the will; and that the defendant lawyers breached a duty to the plaintiffs by failing to provide for after-born children in the will and first codicil  or to correct that omission by providing for Patricia in the second codicil as the testator intended. Upon the defendants' motion, the trial court dismissed this complaint with prejudice for lack of privity, and, based in part on the trial record in the companion probate case, see Azcunce v. Estate of Azcunce, 586 So.2d 1216 (Fla. 3d DCA 1991), which the parties proffered, entered final summary judgment for the defendants. The plaintiffs appeal.

II
The Florida Supreme Court in Angel, Cohen & Rogovin v. Oberon Investment, N.V., 512 So.2d 192 (Fla. 1987), states the controlling law as to who may bring a legal malpractice action against an attorney:
"Florida courts have uniformly limited attorneys' liability for negligence in the performance of their professional duties to clients with whom they share privity of contract. Ginsberg v. Chastain, 501 So.2d 27 (Fla. 3d DCA 1986); Drawdy [v. Sapp, 365 So.2d 461 (Fla. 1st DCA *1223 1978)]; Adams v. Chenowith, 349 So.2d 230 (Fla. 4th DCA 1977). The only instances in Florida where this rule of privity has been relaxed is where it was the apparent intent of the client to benefit a third party. The most obvious example of this is the area of will drafting. Lorraine v. Grover, Ciment, Weinstein, & Stauber, P.A., 467 So.2d 315 (Fla.3d DCA 1985); DeMaris v. Asti, 426 So.2d 1153 (Fla. 3d DCA 1983); McAbee v. Edwards, 340 So.2d 1167 (Fla. 4th DCA 1976). Florida courts have refused to expand this exception to include incidental third-party beneficiaries. For the beneficiaries' action in negligence to fall within the exception to the privity requirement, testamentary intent as expressed in the will must be frustrated by the attorney's negligence and as a direct result of such negligence the beneficiaries' legacy is lost or diminished. We see no reason to expand this limited exception and specifically reject the invitation to adopt California's balancing of factors test. Biakanja v. Irving, 49 Cal.2d 647, 320 P.2d 16 (1958)."
512 So.2d at 194.
The so-called will-drafting exception to the aforesaid privity requirement is an extremely limited one. Only where the testator's intent as expressed in the will itself, not as shown by extrinsic evidence, is frustrated due to the negligence of the testator's attorney  does the frustrated beneficiary of the will have a legal malpractice action against the testator's lawyer. For example, where (1) the testator makes a will leaving all her property to her daughter and remarries thereafter, (2) hires a lawyer to make certain that her daughter remains the sole beneficiary under the will after her remarriage, and is negligently assured by the lawyer that no change was necessary to effect this intention, and (3) upon her death, her husband takes a statutory share of her estate as a pretermitted husband  it has been held that the daughter has a legal malpractice action against the testator's lawyer; this is so because the testator's testamentary intent, as expressed in the will, to leave all her property to her daughter was frustrated due to the lawyer's negligent failure to draft a new will specifically excluding the testator's new husband and again leaving all her property to the daughter. McAbee v. Edwards, 340 So.2d 1167 (Fla. 4th DCA 1976). As we stated in DeMaris v. Asti, 426 So.2d 1153 (Fla. 3d DCA 1983):
"An attorney preparing a will has a duty not only to the testator-client, but also to the testator's intended beneficiaries, who may maintain a legal malpractice action against the attorney on theories of either tort (negligence) or contract (as third-party beneficiaries). McAbee v. Edwards, 340 So.2d 1167 (Fla. 4th DCA 1976). However, liability to the testamentary beneficiary can arise only if, due to the attorney's professional negligence, the testamentary intent, as expressed in the will, is frustrated, and the beneficiary's legacy is lost or diminished as a direct result of that negligence. [e.s.] Ventura County Humane Society for the Prevention of Cruelty to Children and Animals, Inc. v. Holloway, 40 Cal. App.3d 897, 115 Cal. Rptr. 464 (1974). There is no authority  the reasons being obvious  for the proposition that a disappointed beneficiary may prove, by evidence totally extrinsic to the will, the testator's testamentary intent was other than as expressed in his solemn and properly executed will."
426 So.2d at 1154 (footnote omitted; emphasis in original).
The estate of the testator, on the other hand, may maintain a legal malpractice action against the testator's attorney for any acts of professional negligence committed by the attorney in the course of the latter's representation of the testator  as the privity requirement for a legal malpractice action is obviously satisfied. The damages, however, which the estate may recover for the attorney's negligent failure to include an intended beneficiary in the will are limited. Clearly, the testator's estate *1224 should be entitled to a return of the attorney's fee paid by the testator to the lawyer, as well as any costs and fees incurred in defending the estate against any action generated by the lawyer's negligence, such as an action brought by the omitted beneficiary to receive a share of the estate. See Dayton v. Conger, 448 So.2d 609, 611 (Fla. 3d DCA 1984) (recognizing that fees from separate litigation may be recovered as special damages in an action between one of the parties to the separate litigation and the party allegedly creating the need for the litigation); State Farm Fire & Casualty Co. v. Pritcher, 546 So.2d 1060 (Fla. 3d DCA 1989) (same; wrongful act doctrine). On the other hand, the estate should not be able to recover the amount of the bequest which the testator intended to leave to the omitted beneficiary because the estate was clearly not diminished and therefore not injured by such negligence. Heyer v. Flaig, 70 Cal.2d 223, 74 Cal. Rptr. 225, 229, 449 P.2d 161, 165 (1969).

III
Turning to the instant case, we have no trouble in concluding that the children of the testator herein have no legal malpractice action against the testator's lawyers. These children are obviously not in privity with these lawyers and do not otherwise qualify under the will-drafting exception to the privity requirement. As to the will-drafting exception, the testator's intent as expressed in the will was in no way frustrated by the alleged negligence of the testator's lawyers in failing to provide for Patricia in the will or codicils, as the will and codicils, by definition, do not purport to leave anything to Patricia. Beyond that, Lissette, Natalie, and Gabriel suffered no damages whatever by the failure to include Patricia in the testamentary disposition; to the contrary, they gained a greater share of the estate because of such omission.
Patricia argues, however, that the testator's intent as established by certain extrinsic evidence[1] was frustrated by the alleged negligence of the testator's lawyers in that the latter failed to provide for Patricia in the will and codicils as the testator allegedly intended. The fatal flaw in this argument is that such extrinsic evidence is totally inadmissible to establish the testator's intent; in order to invoke the will-drafting exception to the rule of privity in attorney malpractice actions, testamentary intent may only be established through the will itself. Angel, Cohen & Rogovin; DeMaris. This necessarily means that a disappointed beneficiary, as here, may not sue the testator's lawyers for alleged negligence in failing to include the claimed beneficiary in the will, else a solemnly executed will could, in effect, be amended to include additional beneficiaries through the device of a legal malpractice action.
The testator's estate, on the other hand, clearly has standing in the instant case to sue the testator's lawyers for the latter's alleged negligence in failing to include Patricia in the testator's testamentary scheme, as the privity requirement for such a legal malpractice action is obviously satisfied. The estate's damages, however, are limited to the attorney's fees paid by the testator to the lawyers for their alleged negligence in drafting the will and codicils  and to the attorney's fees and costs in defending a companion suit brought by Patricia to recover a statutory share of the estate as an alleged pretermitted child. See Azcunce v. Estate of Azcunce, 586 So.2d 1216 (Fla. 3d DCA 1991). This latter *1225 suit was directly generated by the lawyer's alleged negligence in failing to provide for Patricia in the will or codicils; had such provision been made, Patricia's action would have been entirely unnecessary.
The final judgment under review is affirmed as to the claims of the testator's children  and reversed and remanded as to the claim of the testator's estate.
Affirmed in part; reversed in part.
GERSTEN, J., concurs.
LEVY, J., specially concurs with opinion.
LEVY, Judge (specially concurring).
I write separately, in addition to my concurring opinion in the companion case of Azcunce v. Estate of Azcunce, 586 So.2d 1216 (Fla. 3d DCA 1991), to express my frustration at the apparent inability of the law of this State to allow a remedy for an undeniable injustice. I agree that the majority opinion correctly applies current Florida law relating to the problems presented by this case and its companion case. What troubles me is that the application of the current law of this State does, in fact, require the Court to come to the result obtained by the majority opinion herein.
While I clearly understand the obligation of the District Courts of Appeal to follow the legal precedent set by the Florida Supreme Court, I also believe that it is my obligation to seek change in those areas of the law where I feel that the need for change has been demonstrated. As stated by the Florida Supreme Court in Hoffman v. Jones, 280 So.2d 431, 434, (Fla. 1973):
This is not to say that the District Courts of Appeal are powerless to seek change; they are free to certify questions of great public interest to this Court for consideration, and even to state their reasons for advocating change. They are, however, bound to follow the case law set forth by this Court.
When one considers the undisputed facts of this case, it is difficult to imagine a more compelling argument in favor of modifying the law that now forms an impediment to Patricia in her quest for justice. Following the route prescribed in the above cited case, this court has, in a separately issued Clerk's Order emanating from this case, certified the question presented herein as being one of great public importance.
The facts involved in this case are really not in dispute. The main problem posed by this case stems from the legal implications, created by the current state of the law in Florida, that spring from those facts and which prevent Patricia from receiving her fair share and, ultimately in my view, justice.
Rene R. Azcunce (decedent) executed his Last Will and Testament on May 4, 1983. His will established a trust for the benefit of his then born children defined in Article Twelfth, Paragraph (a) as "my daughters Lisette and Natalie Azcunce, and my son Gabriel Azcunce". Article Twelfth defined "issue" as "my children [as defined in Paragraph (a) above] and their legitimate natural born and legally adopted lineal decedents (sic)." There was no provision in the will of decedent for after-born children.
On August 8, 1983, the decedent executed a first codicil to his will. The first codicil stated that upon the death of the surviving spouse, accrued income and corpus of the Residuary Estate (Marital Trust) were to be paid to the surviving issue, per stirpes. Furthermore, the first codicil republished all other terms of the will. Thereafter, decedent and his wife had a fourth child, Patricia, who was born on March 14, 1984.
On June 25, 1986, decedent executed a second codicil which removed a certain person as a Trustee in order to qualify for a marital deduction under the federal and state tax laws. Testimony from the attorney who prepared the second codicil revealed that the decedent had contacted him and mentioned that he (the decedent) and his wife had another child. At the request of the decedent, the attorney prepared a *1226 new will which included that child, Patricia, as a beneficiary. A copy of the new will was mailed to the decedent on April 4, 1986, for the decedent to review. The new will, however, was not executed due to a disagreement that the attorney had with the decedent over the worth of decedent's assets. The disagreement between the decedent and the attorney, which caused the decedent not to sign the new will, was totally unrelated to the provision in the new will relating to Patricia. Based upon decedent's concern that a change in the marital trust, contained in the original will, had to be effected expeditiously, the second codicil was prepared by the attorney, and signed by decedent, so that the marital trust change could be effectuated immediately, rather than waiting for the preparation of another draft of a new will. The second codicil contained language that specifically republished the terms of the original will and the first codicil. Not long thereafter, decedent died.
The lower court held there was no ambiguity between the will and the first and second codicils as to the definition of issue or children and, thus, there was no ambiguity as to the testator's intent. Because the second codicil made no reference to Patricia, but did specifically republish the original will, her status as a pretermitted child was destroyed and she was no longer able to share in her father's estate.
In addition to the fundamental principles of fairness that all members of a free and just society are taught to apply, all students of the law are aware of the concept that "for every wrong, there is a remedy". In fact, Justice Terrell, of the Florida Supreme Court, referred to that concept when, in the case of Holland v. Mayes, 155 Fla. 129, 19 So.2d 709 (1944), he wrote, on page 711 of that opinion, the following:
When we commenced the study of law, we were early confronted with the maxim; For every wrong there is a remedy. Section Four of our Declaration of Rights, in providing that the courts shall be open at all times to speedily avenge wrongs to person or property, was designed to give life and vitality to this maxim.
The foregoing is not a new or novel concept. In fact, it has been reaffirmed by courts of this State in various contexts, specifically including cases in which a concern had been raised about the possibility of the courts being inundated with numerous and/or fraudulent claimants seeking access to the justice system. Rather than turning these people away, the courts always preferred to allow all to have access to the courts, relying upon the ability of the justice system to sift out the fraudulent and/or inappropriate claimants from those claimants that had actually suffered a wrong. In the final analysis, that is what a trial is all about. The trial courts exist for the purpose of searching for the truth and resolving conflicts.
These principles were also eloquently articulated by the Fourth District Court of Appeal, in the case of Stewart v. Gilliam, 271 So.2d 466 (Fla. 4th DCA 1973) wherein it was stated:
More significant than what may have been the experience in other states is the basic principle that a fear of expansive litigation should not deter courts from granting relief in meritorious cases.
The fundamental concept of justice under the law would reject any rule that measures the availability of a forum on the nebulous principle of "a floodtide of litigation" or "a virtual avalanche of cases". There is no more bedrock principle of law than that which declares that for every legal wrong there is a remedy and that every litigant is entitled to have his cause submitted to the arbitrament of the law. Tidwell v. Witherspoon, 1885, 21 Fla. 359. The principle that for every wrong there is a remedy is embodied in the Declaration of Rights of the Florida Constitution which provides that the Florida courts are to be open so that every person shall have a remedy by due course of law. (Section 21). It is far more consistent with justice to be concerned *1227 with the availability of a judicial forum for the adjudication of individual rights than to deny access of our courts because of speculation of an increased burden.
This subject was again addressed in the case of Perkins v. Pare, 352 So.2d 64 (Fla. 4th DCA 1977) in which the court expressed this philosophy as follows:
... the aggrieved party must be afforded a concomitant right of access to the court for redress of such injury or wrong. Article I, Section 21, Declaration of Rights, Florida Constitution (1968). There is no principle of law more fundamental than that which declares for every wrong there is a remedy. Waller v. First Savings & Trust Co., 103 Fla. 1025, 138 So. 780 (1931).
It would be appropriate in light of the particular circumstances of this case and the action herein for this court to offer the following gratuitous reflections. The notion of rendering justice is not simply an empty concept to which "lip service" is given. We must never lose sight in the avalanche of litigation of the fundamental objective of the judicial process, namely, to render justice. If it means that the court must take a proverbial "deep breath and swallow" and undo an act which at the time it was done was seemingly correct in order to reach what is now perceived to be a just determination  then so be it!
Having said all of that, I am now faced with the reality of Florida case law dealing with the question of who has standing to sue an attorney for professional malpractice and, more specifically, the significance that an absence of privity, between the claimant and the will draftsman, bears to answering that question. In Angel, Cohen & Rogovin v. Oberon Investment, N.V., 512 So.2d 192 (Fla. 1987), the Florida Supreme Court stated, at 194, that "the only instances in Florida where this rule of privity has been relaxed is where it was the apparent intent of the client to benefit a third party. The most specific example of this is the area of will drafting". The Supreme Court then goes on to cite the case of DeMaris v. Asti, 426 So.2d 1153 (Fla. 3d DCA 1983), as standing for that proposition. Specifically, DeMaris requires that for the appellant's malpractice against the appellee herein to proceed in the absence of privity between the appellant and the appellee, the testator's "... testamentary intent as expressed in the will must be frustrated by the attorney's negligence and as a direct result of such negligence the beneficiaries' legacy is lost or diminished." Angel, 512 So.2d at 194 (emphasis added).
Clearly, in the instant case, the testator's intent is not "expressed in the will". That is exactly the problem! The very essence of Patricia's complaint, as carried forward in the action filed on her behalf against the draftsman of the second codicil, is that the testator's intent was not reflected in the face of the will and, knowing that, the draftsman of the second codicil, acting as the testator's attorney, allowed the testator to sign the second codicil knowing that it specifically republished the testator's original will and first codicil, thereby eliminating Patricia's chances to be protected as a pretermitted child as provided for in Section 732.302, Florida Statutes (1985).
Accordingly, Patricia is relegated to the never-never land of the ultimate in circuitous reasoning. Namely, Patricia would appear to have a colorable claim against the draftsman of the second codicil for not either advising her father of the legal consequences of signing the second codicil (to-wit: that Patricia would lose her status as a pretermitted child) or providing for her in the second codicil, or some other such document, so as to give life and vitality to her father's (the testator's) wishes. However, according to Florida law, she cannot sue the draftsman of the second codicil for leaving her name out of the second codicil because, wonder of wonders, her name is not mentioned in the second codicil.
Ordinarily, legal principles are formulated and developed in order to enhance the *1228 ability of the Court to render justice efficiently and fairly. These principles of law, which act as rules in regulating the administration of justice, are not intended to impair the dispensing of justice. In fact, as stated in Kelley v. Gottschalk, 143 Fla. 371, 196 So. 844 (1940):
... The administration of justice is the most precious function a democracy is called on to perform and no rule of procedure was ever intended to defeat it. Courts must have rules to guide them in the performance of this function, but it has never been considered improper to toss right and common sense in the scales and weigh them with the evidence to reach a just result. Rules of procedure are as essential to administer justice as they are to conduct a baseball game, but they should never be permitted to become so technical, fossilized, and antiquated that they obscure the justice of the cause and lead to results that bring its administration into disrepute.
In view of the foregoing, one must wonder as to who will have the unenviable task of trying to convince Patricia that, according to the case law of the State of Florida, the Constitution of this State requires that there be a remedy for every wrong. If there ever was a case where a person was wronged, but allowed to fall through a crack in the legal system, this is the case. However, in this case it was not a crack, but rather, a monumental abyss.
NOTES
[1] This extrinsic evidence was proffered, but was ultimately rejected by the court in the companion probate case; this same evidence was considered but was also rejected by the trial court below. Briefly stated, the defendant Howard Roskin testified (1) that he prepared, at the deceased's request, a new will naming Patricia as an additional beneficiary shortly before the deceased's death, (2) that the testator never executed the will because a dispute thereafter arose over the value of the deceased's estate, and (3) that the deceased instead executed the second codicil in question and then died. There was also other extrinsic evidence that, during his lifetime, the deceased stated to several people his desire to provide for Patricia in his will.