586 So.2d 1216 (1991)
Patricia AZCUNCE, As a Beneficiary of the Estate of Rene R. Azcunce, Deceased, Appellant,
v.
ESTATE OF Rene R. AZCUNCE, Deceased, et al., Appellees.
No. 89-2234.
District Court of Appeal of Florida, Third District.
September 17, 1991.
*1217 Judith A. Frankel, Miami Beach, for appellant.
Murai, Wald, Biondo & Moreno and Marianne A. Vos, Miami, for appellees.
Before HUBBART, LEVY and GERSTEN, JJ.
HUBBART, Judge.
The central issue presented by this appeal is whether a child who is born after the execution of her father's will but before the execution of a codicil to the said will is entitled to take a statutory share of her father's estate under Florida's pretermitted child statute  when the will and codicils fail to provide for such child and all the other statutory requirements for pretermitted-child status are otherwise satisfied. We hold that where inter alia the subject codicil expressly republishes the original will, as here, the testator's child who is living at the time the codicil is executed is not a pretermitted child within the meaning of the statute. We, accordingly, affirm the final order under review which denies the child herein a statutory share of her father's estate as a pretermitted child.

I
The facts of this case are entirely undisputed. On May 4, 1983, the testator Rene R. Azcunce executed a will which established a trust for the benefit of his surviving spouse and his then-born children: Lisette, Natalie, and Gabriel; the will contained no provision for after-born children. On August 8, 1983, and June 25, 1986, the testator executed two codicils which did not alter in any way this testamentary disposition and also made no provision for after-born children.
On March 14, 1984, the testator's daughter Patricia Azcunce was born  after the first codicil was executed, but before the second codicil was executed. The first codicil expressly republished all the terms of the original will; the second codicil expressly republished all the terms of the original will and first codicil.
*1218 On December 30, 1986, the testator, who was thirty-eight (38) years old, unexpectedly died of a heart attack  four months after executing the second codicil. After the will and codicils were admitted to probate, Patricia filed a petition seeking a statutory share of her father's estate as a pretermitted child; the trial court denied this petition. Patricia appeals.

II
The statute on which Patricia relies for a share of her father's estate provides:
"When a testator omits to provide in his will for any of his children born or adopted after making the will and the child has not received a part of the testator's property equivalent to a child's part by way of advancement, the child shall receive a share of the estate equal in value to that he would have received if the testator had died intestate, unless:
(1) It appears from the will that the omission was intentional; or
(2) The testator had one or more children when the will was executed and devised substantially all his estate to the other parent of the pretermitted child.
The share of the estate that is assigned to the pretermitted child shall be obtained in accordance with § 733.805."
Section 732.302, Florida Statutes (1985) (emphasis added). Without dispute, Patricia was a pretermitted child both at the time the testator's will and the first codicil thereto were executed, as, in each instance, the testator "omit[ted] to provide in his will [or codicil] for [Patricia who was] born ... after ... the will [or codicil was executed]"; moreover, Patricia at no time received a part of the testator's property by way of advancement, the will and first codicil do not expressly disinherit Patricia, and the testator did not substantially devise all of his estate to Patricia's mother. The question in this case is whether the testator's execution of the second codicil to the will after Patricia had been born destroyed her prior statutory status as a pretermitted child.
It is well settled in Florida that, as a general rule, the execution of a codicil to a will has the effect of republishing the prior will as of the date of the codicil. Waterbury v. Munn, 159 Fla. 754, 32 So.2d 603 (1947); In re Campbell's Estate, 288 So.2d 528 (Fla. 3d DCA), cert. denied, 300 So.2d 266 (Fla. 1974). Although this is not an inflexible rule and must at times give way to a contrary intent of the testator, Waterbury; Massachusetts Audubon Soc'y, Inc. v. Ormond Village Improvement Ass'n, 152 Fla. 1, 10 So.2d 494 (1942), it always applies where, as here, the codicil expressly adopts the terms of the prior will; this is so for the obvious reason that such a result comports with the express intent of the testator. See T. Atkinson, Law of Wills ch. 10 § 91 (2d ed. 1953); 2 W. Bowe & D. Parker, Page on Wills § 23.18 (1960); Evans, Testamentary Republication, 40 Harv.L.Rev. 71, 100-04 (1926).

III
Turning to the instant case, it is clear that the testator's second codicil republished the original will and first codicil because the second codicil expressly so states. This being so, Patricia's prior status as a pretermitted child was destroyed inasmuch as Patricia was alive when the second codicil was executed and was not, as required by Florida's pretermitted child statute, born after such codicil was made. Presumably, if the testator had wished to provide for Patricia, he would have done so in the second codicil as she had been born by that time; because he did not, Patricia was, in effect, disinherited which the testator clearly had the power to do. Flagler v. Flagler, 94 So.2d 592 (Fla. 1957); Hooper v. Stokes, 107 Fla. 607, 145 So. 855 (1933). Indeed, the result we reach herein is in full accord with the results reached by courts throughout the country based on identical circumstances. Young v. Williams, 253 N.C. 281, 116 S.E.2d 778 (1960); Laborde v. First State Bank & Trust Co., 101 S.W.2d 389 (Tex.Civ.App. 1936); Gooch v. Gooch, *1219 134 Va. 21, 113 S.E. 873 (1922); Francis v. Marsh, 54 W. Va. 545, 46 S.E. 573 (1904).
To avoid this inevitable result, Patricia argues that the will and two codicils are somehow ambiguous and that, accordingly, the court should have accepted the parol evidence adduced below that the testator intended to provide for Patricia; Patricia also urges that the will should have been voided because the draftsman made a "mistake" in failing to provide for Patricia in the second codicil. These arguments are unavailing. First, there is utterly no ambiguity in the subject will and codicils which would authorize the taking of parol evidence herein, and the trial court was entirely correct in rejecting same. Barnett First Nat'l Bank of Jacksonville v. Cobden, 393 So.2d 78 (Fla. 5th DCA 1981). Second, the mistake of which Patricia complains amounts, at best, to the draftsman's alleged professional negligence in failing to apprise the testator of the need to expressly provide for Patricia in the second codicil; this is not the type of mistake which voids a will under Section 732.5165, Florida Statutes (1987). In re Mullins' Estate, 128 So.2d 617 (Fla. 2d DCA 1961).
For the above-stated reasons, the final order under review is, in all respects,
Affirmed.
GERSTEN, J., concurs.
LEVY, J., specially concurs with opinion.
LEVY, Judge (specially concurring).
I write separately only to express my frustration with the apparent inability of the justice system of this State to be in a position to provide relief to someone who is clearly entitled to it, to-wit: Patricia Azcunce, the appellant herein who was the daughter of Rene R. Azcunce.
Rene R. Azcunce (decedent) executed his Last Will and Testament on May 4, 1983. His will established a trust for the benefit of his then born children defined in article Twelfth, Paragraph (a) as "my daughters Lisette and Natalie Azcunce, and my son Gabriel Azcunce". Article Twelfth defined "issue" as "my children [as defined in Paragraph (a) above] and their legitimate natural born and legally adopted lineal decedents (sic)." There was no provision in the will of decedent for after-born children.
On August 8, 1983, the decedent executed a first codicil to his will. The first codicil stated that upon the death of the surviving spouse, accrued income and corpus of the Residuary Estate (Marital Trust) were to be paid to the surviving issue, per stirpes. Furthermore, the first codicil republished all other terms of the will. Thereafter, decedent and his wife had a fourth child, Patricia, who was born on March 14, 1984.
On June 25, 1986, decedent executed a second codicil which removed a certain person as a Trustee in order to qualify for a marital deduction under the federal and state tax laws. Testimony from the attorney who prepared the second codicil revealed that the decedent had contacted him and mentioned that he (the decedent) and his wife had another child. At the request of the decedent, the attorney prepared a new will which included that child, Patricia, as a beneficiary. A copy of the new will was mailed to the decedent on April 4, 1986, for the decedent to review. The new will, however, was not executed due to a disagreement that the attorney had with the decedent over the worth of decedent's assets. The disagreement between the decedent and the attorney, which caused the decedent not to sign the new will, was totally unrelated to the provision in the new will relating to Patricia. Based upon decedent's concern that a change in the marital trust, contained in the original will, had to be effected expeditiously, the second codicil was prepared by the attorney, and signed by decedent, so that the marital trust change could be effectuated immediately, rather than waiting for the preparation of another draft of a new will. The second codicil contained language that specifically republished the terms of the original *1220 will and the first codicil. Not long thereafter, decedent died.
The lower court held there was no ambiguity between the will and the first and second codicils as to the definition of issue or children and, thus, there was no ambiguity as to the testator's intent. Because the second codicil made no reference to Patricia, but did specifically republish the original will, her status as a pretermitted child was destroyed, pursuant to Section 732.302, Florida Statutes (1985), and she was no longer able to share in her father's estate.
What makes this case so troubling is that, beyond the fact that she is being denied the opportunity to share in her deceased father's assets, the record in this case, as well as in the companion case of Espinosa v. Sparber, Shevin, et al., 586 So.2d 1221 (Fla. 3d DCA 1991), clearly reflects that it is virtually uncontroverted that Rene R. Azcunce intended that his daughter, the appellant herein, share in his assets after his death. Based upon the evidence presented before the trial court, it is clear that her apparent inability to receive that which her father clearly wanted her to have is the result of the current state of the case law in the State of Florida.
Lest there be any misunderstanding, I hasten to add that I understand that the majority opinion has correctly interpreted and applied the current law of this State that relates to the facts of this case. The majority opinion reflects that the current posture of the law in this area is designed to give effect to the testator's wishes and to deny any relief to false or fraudulent claimants. However, the fear of false or fraudulent claims should never be allowed to be used as the reason to bar claimants from filing their claims with the courts of this State. Rather, the courthouse doors must always remain open in the hope that the justice system will do what it is supposed to do  render justice. In furtherance of that end, hopefully, valid claims will prevail and false claims will fail. If, however, courthouse doors are barred to any type of claimant, then we all, as members of a supposedly free and just society, suffer from such a denial of access to the courts.
As I indicated above, the unrefuted evidence in this case reflects that Patricia's father, the decedent herein, intended Patricia to receive her fair share. It is only through an unfortunate series of circumstances, and the legal implications springing therefrom, that Patricia is being denied what her father wanted her to receive.
The next to last paragraph of the majority opinion seems to suggest the possibility that Patricia might find relief in a professional malpractice action against the professional draftsman who prepared the second codicil knowing, according to the undisputed evidence, that Patricia's father wanted Patricia to receive her fair share of his estate, but still allowed Patricia's father to sign it (thereby extinguishing Patricia's right to receive her share as a "pretermitted child") without either advising her father of the legal consequences of signing the second codicil (to-wit: that Patricia would lose her status as a pretermitted child) or providing for her in the second codicil, or some other such document, so as to give life and vitality to her father's (the testator's) wishes. However, this flicker of light of possible relief, that might appear to offer hope to Patricia, is soon doused as one reads the majority opinion of this Court in Espinosa v. Sparber, Shevin, et al., which is the appeal growing out of the trial court's dismissal of the professional malpractice case filed, on behalf of Patricia, against the draftsman of the codicil. For the reasons stated in my concurring opinion in the case of Espinosa v. Sparber, Shevin, et al., and the cases that I refer to therein, it would appear that the case law of this State has "missed the boat" in its efforts to make sure that there is "a remedy for every wrong".