943 So.2d 274 (2006)
MIAMI RESCUE MISSION, INC., Appellant,
v.
Fair Ellen ROBERTS, Appellee.
No. 3D06-1037.
District Court of Appeal of Florida, Third District.
November 29, 2006.
Tew Cardenas and Jeffrey Tew, Miami, for appellant.
H.C. Palmer, III; George W. Chesrow, Coral Gables, for appellee.
Before CORTIÑAS and ROTHENBERG, JJ., and SCHWARTZ, Senior Judge.
CORTIÑAS, Judge.
On January 19, 2005, Ethel Manucy ("Mrs. Manucy") executed a will ("2005 will") while hospitalized with severe pain and under the influence of very strong medication. The following day she passed away. The effect of Mrs. Manucy's 2005 will was to disinherit her longtime caregiver and friend, Fair Ellen Roberts ("Roberts"), *275 and, instead, leave her residuary estate to four charities, in equal shares. Appellant, Miami Rescue Mission, Inc., was one of the charities.[1]
When Mrs. Manucy's attorney offered her 2005 will for probate, Roberts petitioned the circuit court for revocation of Mrs. Manucy's 2005 will from probate and for administration of Mrs. Manucy's previously executed 2003 will ("2003 will"). Roberts argued that Mrs. Manucy was suffering from an insane delusion at the time she executed her 2005 will, and, therefore, lacked the requisite testamentary capacity. Specifically, Mrs. Manucy's delusion involved Roberts' continued care of Mrs. Manucy, her dog, and her finances. Mrs. Manucy believed that Roberts had abandoned her, "let her dog die," and was stealing from her. The trial court found Roberts' position supported by clear and convincing evidence and granted Roberts' petitions. This appeal followed.
In a probate case, we review the trial court's conclusions to determine whether they are supported by substantial and competent evidence and, also, whether the trial court misinterpreted the legal effect of the evidence. Raimi v. Furlong, 702 So.2d 1273, 1286 (Fla. 3d DCA 1997) (citation omitted). Here, we find that the trial court's findings of fact were supported by competent and substantial evidence and that the trial court correctly interpreted the legal effect of the evidence.
In its twenty-two page order, the trial court carefully explained the evidence upon which it relied in reaching its conclusions. Specifically, the trial court's order highlighted the testimony of Drs. Ubeda, Delgadillo, Currier, and Haber, and detailed how the medication given to Mrs. Manucy affected her in the days leading up to her passing. Additionally, the trial court explained how Mrs. Manucy's mental condition deteriorated from January 16, 2005 until her death on January 20, 2005. The trial court found that Nurse Fortin's testimony was consistent with that of the doctors who testified. Similarly, the trial court found Roberts' testimony that she and her daughter continued to visit Mrs. Manucy daily and continued to care for Mrs. Manucy's dog and finances to be credible.
The trial court noted that the chronology established by Dr. Ubeda's testimony was consistent with Roberts' testimony. Specifically, Dr. Ubeda testified that Mrs. Manucy's personality completely changed on January 16, 2005. Roberts testified that beginning on January 16, 2005, Mrs. Manucy failed to recognize her and, instead, referred to her by her daughter's name. The trial court noted that the nurses' notes in Mrs. Manucy's medical chart indicate that Mrs. Manucy first began to voice her concerns about Roberts on January 16, 2005.
In fact, Dr. Ubeda was so concerned about the changes in Mrs. Manucy's personality on January 16, 2005 that he sought a psychiatric consultation from Dr. Delgadillo. Dr. Delgadillo met with Mrs. Manucy on January 18, 2005, and she told him that she was feeling sad and depressed because she thought her caretaker had abandoned her and was failing to care for her dog. When Dr. Delgadillo learned from Dr. Ubeda that this was not the case, *276 he concluded that Mrs. Manucy was either hallucinating or delusional.
Because these findings of fact are amply supported by the record and because the trial court is in a superior position to gauge witness credibility, we affirm the trial court's findings of fact.
We also find that the trial court correctly interpreted the legal effect of the evidence presented to it. Appellant cites to evidence in the record that Mrs. Manucy was found to be alert by the nurses treating her throughout her hospitalization. Dr. Ubeda, however, testified that he disagreed with the nurses' classification, and Dr. Currier explained that certain forms of delirium are often mistaken as cooperativeness in a patient. Further, a nurse's observation that a patient is alert does not equate to a legal finding that the patient possesses testamentary capacity.
"Where there is an insane delusion in regard to one who is the object of the testator's bounty, which causes him to make a will he would not have made but for that delusion, the will cannot be sustained." Newman v. Smith, 77 Fla. 633, 667 and 688, 82 So. 236, 236 (1919). Further, "an insane delusion has been defined as a spontaneous conception and acceptance as a fact of that which has no real existence except in imagination. The conception must be persistently adhered to against all evidence and reason." Hooper v. Stokes, 107 Fla. 607, 145 So. 855, 856 (1933).
Appellant contends that Mrs. Manucy had a factual basis for believing Roberts had abandoned her. Upon Mrs. Manucy's request, Nurse Fortin called Mrs. Manucy's house and could not reach Roberts. Nurse Fortin reported this to Mrs. Manucy and Mrs. Manucy decided to call her lawyer to change her will. If this were all the evidence regarding Roberts' involvement with Mrs. Manucy, it may have been reasonable for Mrs. Manucy to rely on it when changing her will. However, it was undisputed that Roberts visited Mrs. Manucy each and every day and that each visit began with Roberts reassuring Mrs. Manucy that her dog was doing fine. This reality, when contrasted with Mrs. Manucy's continued belief that Roberts was not visiting her and not caring for her dog, coupled with her misidentification of Roberts, was sufficiently unreasonable to permit the trial court to determine Mrs. Manucy was suffering from an insane delusion.
We find that the trial court correctly determined that Mrs. Manucy was suffering from an insane delusion regarding Roberts and that she executed her 2005 will based on this delusion. Accordingly, we affirm the trial court's order revoking the 2005 will from probate and submitting the 2003 will for probate administration.
Affirmed.
NOTES
[1] The Humane Society of Greater Miami and the American Cancer Society  Florida Division, Inc. were two of the other charities named as residuary beneficiaries. They joined this appeal and adopted the arguments of Miami Rescue Mission, as presented in Miami Rescue Mission's initial brief. Their joinder is proper under Rule 9.360 of the Florida Rules of Civil Procedure, as they filed timely Notices of Joinder in the Appeal, and have indicated that they adopt Miami Rescue Mission's brief.